In re **GLOBE NEWSPAPER COMPANY**, Petitioner.

**UNITED STATES** of America, Appellee,

v.

Edmund M. **HURLEY**, et al., Defendants, Appellees,

Appeal of GLOBE NEWSPAPER COMPANY, Appellant.

Nos. 90–1338, 90–1349.

United States Court of Appeals, First Circuit.

Heard June 6, 1990.

Decided Nov. 28, 1990.

E. Susan Garsh with whom Jonathan M. Albano, Tory A. Weigand and Bingham, Dana & Gould, Boston, Mass., were on Petition for Writ of Mandamus and Prohibition, for petitioner, appellant.

James C. Heigham and Choate, Hall & Stewart, Boston, Mass., on brief, for Massachusetts Newspaper Publishers Ass'n, amicus curiae.

F. Dennis Saylor, IV, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., and Robert L. Ullmann, Deputy Associate U.S. Atty., were on brief for the U.S.

Charles Fried, Cambridge, Mass., with whom John G. Fabiano, Waban, Mass., Christopher J. Supple, Needham, Mass., and Hale and Dorr, Boston, Mass., were on Petition for Writ of Mandamus and Prohibition, for respondent, the Honorable Edward F. Harrington.

Before BREYER, Chief Judge,
COFFIN, Senior Circuit Judge and
LEVIN H. CAMPBELL, Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

The Globe Newspaper Company ("Globe") appeals from an order of the District Court for the District of Massachusetts which effectively denied to Globe reporters permission to examine the names and addresses of jurors who had participated in a just-completed criminal trial. The Globe alternatively petitions for a writ of mandamus directing the district court to release the jury list. The Globe argues that the First Amendment to the United States Constitution, as well as the Jury Selection and Service Act, 28 U.S.C. § 1861 *et seq.*, the relevant local district court jury selection rule, and the common law, all entitle the newspaper to be told the juror names and addresses after completion of the trial.

The criminal trial to which the Globe's request relates began on March 5, 1990 and ended in April 1990. There were originally seven defendants, including a prominent Boston defense attorney, several other attorneys, a reputed fugitive Mafia member, and a member of the Bahamian parliament. The charges centered around an alleged conspiracy to conceal illegal drug profits from the Internal Revenue Service. Several defendants and charges were dismissed by the court during the trial. The jury eventually convicted two defendants and acquitted one of them.

Pursuant to the judge's express order, the court records listing names and addresses of jurors were kept confidential during the trial. The court's right to do so during the trial is not an issue in the present proceeding.

Immediately following the verdict and jury's discharge on April 19, 1990, the judge advised as follows:

Members of the jury, the press may call you. It is up to you whether to speak with them.

My suggestion is this, though: These are very grave matters. You have deliberated as a body, in confidence, and it is best that the result of your deliberations should remain in confidence.

The same day Globe reporters sought access to the court's record of the juror names and addresses. Access was refused, and the Globe then formally moved to intervene in the case and for access to the list of the jurors, and their addresses. The district court denied the motion to intervene.[1] The Globe thereupon appealed from the order denying intervention and it also filed in this court a petition for a writ of mandamus.

## I.

Because the Globe was never a party to the criminal proceeding below, and because the right of a non-party to intervene in a criminal proceeding is doubtful, we decline (without deciding if there is, in fact, a right to intervene under these circumstances) to entertain the Globe's appeal from denial of that order. *In re Globe Newspaper Co.*, 729 F.2d 47, 50 & n. 2 (1st Cir.1984). Instead, we find jurisdiction to review under the All Writs Act, 28 U.S.C. § 1651. As we held in the cited case, "the issue that [the] Globe raises is sufficiently novel and important to justify mandamus review." *Id. See In re Berkan*, 648 F.2d 1386, 1389 (1st Cir.1981); *Miller v. United States*, 403 F.2d 77, 79 (2d Cir.1968). Denial of access to the jurors' list adversely affects newsgathering, *compare Data Processing Service v. Camp*, 397 U.S. 150, 153–54, 90 S.Ct. 827, 829–30, 25 L.Ed.2d 184 (1970); denial also implicates important constitutional rights, while, on the other

---

**1.** In denying the motion, the district court stated as follows:

> On Motion of the Globe Newspaper Company To Intervene in the above-entitled case for the limited purpose of asserting the public's right of access to the jury list for the purpose of conducting post-verdict jury interviews, the Court denies same. The jurors in this case explicitly expressed a desire that their names and addresses not be revealed to the press. It

> is the judgment of the Court that interviews of jurors for the sole purpose of exploiting the content to their deliberations, which have been conducted in secret and in confidence with one another, tend to demean the administration of justice in the public's view and to inhibit jurors, present and prospective, from voicing their strongly held views for fear of subsequent public disclosure to the ultimate detriment of the deliberative process.

hand, release may impinge upon juror privacy and raise important court administration issues, *infra.* The district court's ruling is accordingly an appropriate matter for consideration under our supervisory powers. We note that the district judge was ably represented on appeal by experienced counsel. This was helpful to this court, as the position taken by the United States Attorney on behalf of the United States, being in accord with that of the Globe, did not articulate the judge's position favoring jury privacy.

## II. *Synopsis*

 The upshot of our mandamus review, as we explain below, is that we now direct the district court to turn over the requested juror names and addresses to the Globe. We interpret § 10(c) of the District of Massachusetts Plan for Random Selection of Jurors as making this information available to the public unless the presiding judge identifies specific, valid reasons necessitating confidentiality in the particular case. To justify impoundment after the trial has ended, the court must find a significant threat to the judicial process itself. No threat of this dimension was found here. The court did not find, for instance, that the personal safety of the jurors would in any way be compromised by revealing their identities. No doubt stronger reasons to withhold juror names and addresses will often exist *during* trial than *after* a verdict is rendered. After the verdict, release normally would seem less likely to harm the rights of the particular accuseds to a fair trial. *Compare In re Globe Newspaper Co.*, 729 F.2d at 52–53. Even so, there could be circumstances necessitating withholding of juror identities after verdict—such as, most obviously,

when there is some special risk of personal harm to the jurors. Failure of the court to shield jurors from threatened harm could seriously damage the functioning of the courts and the jury system. Were jurors to feel that their personal safety was at risk, they might not only be reluctant to serve but might tailor verdicts so as to forestall harm to themselves, thus depriving the parties of an impartial jury.

However, where—as here—the trial judge points to no special reasons for confidentiality other than the personal preferences of the jurors and the judge's distaste for exposing them to press interviews, the public's long-term interest in maintaining an open judicial process must prevail in the balance. In a democracy, criminal trials should not, as a rule, be decided by anonymous persons.

A reason the district judge suggested for withholding the names and addresses in the present case was his concern that reporters might question jurors as to what transpired during jury deliberations. We share his view that it is unfortunate when a juror divulges the jury's deliberations. Here the judge properly urged the jurors to keep their deliberations confidential.[2] Nonetheless, we do not think the mere possibility of ill-advised disclosures ordinarily justifies withholding the juror identities.

## III. *Requirement of Disclosure Under Federal Jury Selection Rules*

The Globe argues that denial of access to juror identities in this case violates the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861, *et seq.* (1982)[3] and the District of Massachusetts Plan for Random

---

**2.** We need and do not address here the extent of a judge's authority to issue orders restricting conduct by the press amounting to actual harassment of jurors or limiting specific areas of inquiry in such interviews when granted. *See United States v. Harrelson*, 713 F.2d 1114 (5th Cir.1983), *cert. denied sub nom. El Paso Times, Inc. v. United States District Court*, 465 U.S. 1041, 104 S.Ct. 1318, 79 L.Ed.2d 714 (1984); *In re Express News Corp.*, 695 F.2d 807, 811 (5th Cir.1982).

**3.** The Act, § 1863(b)(7) provides:

Among other things, such plan shall—
(7) fix the time when the names drawn from the qualified jury wheel shall be disclosed to parties and to the public. If the plan permits these names to be made public, it may nevertheless permit the chief judge of the district court, or such other district court judge as the plan may provide, to keep these names confidential in any case where the interests of justice so require.

Selection of Jurors, § 10(c),[4] which implements the Act in the District of Massachusetts. The Globe contends that these regulations carry a presumption of public access to petit jury lists which may be overcome only when "the interests of justice so require." The Globe further argues that the reasons the district judge advanced here for withholding the names and addresses failed to meet the interests-of-justice standard.

We agree with the Globe on both counts. The local jury selection plan adopted by the District of Massachusetts pursuant to authority of the federal statute bars disclosure of the names of potential jurors until the persons called for jury service "have appeared, or failed to appear, in response to the summons." The plan goes on to provide that "[a]ny judge of this Court may order that the names of jurors remain confidential even *thereafter* if the interests of justice so require." (Emphasis provided.) The interests-of-justice language in the local rule conforms to the language found in 28 U.S.C. § 1863(b)(7), authorizing local jury plans to permit district judges to keep confidential the names drawn from the jury wheel "in any case where the interests of justice so require."

The second sentence in § 1863(b)(7) is, to be sure, prefaced with the words, "If the plan permits these names to be made public ...", suggesting that a local plan might optionally decline to permit juror names to be made public at all. This option was apparently inserted to allow

the present diversity of practice [around the nation] to continue. Some district courts keep juror names confidential for fear of jury tampering.[5] Other district courts routinely publicize the names. H.R.Rep. No. 1076, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Admin.News 1792, 1801.

The fact remains, nonetheless, that the District of Massachusetts has chosen to be in the latter camp—that is, to allow juror names to be made public after summons and appearance, and thereafter to permit impoundment of juror names only upon a judge's determination that the interests of justice so require. We need not interpret the statutory and constitutional consequences had the jury plan in question been otherwise.

It is also true that the material provisions of both the Act and the District of Massachusetts plan seem especially to address the period immediately after juror names are drawn from the jury wheel. But we think these provisions must be read also to control the release of names during the period after empanelment of a petit jury and until after its discharge. Section 1863(b)(7) specifies that a local plan may permit a judge "to keep [jurors'] names confidential *in any case* where the interests of justice so require." (Emphasis supplied.) "Any case" can only refer to petit jurors since they alone are empanelled to sit in a given case. And the District of Massachusetts plan applies the interests-of-justice standard to confidentiality orders "even thereafter"—a period with no apparent limit.

We conclude, therefore, that in the District of Massachusetts juror names may be withheld (after the jurors have appeared or failed to appear in response to summons) only when a district judge specifically de-

---

**4.** The Plan, § 10(c), adopted pursuant to the Act, provides:

No one shall make public or disclose to any person not employed by this Court the names drawn from the Qualified Jury Wheels until the jurors have been summoned and have appeared, or failed to appear, in response to the summons. Any judge of this Court may order that the names of jurors remain confidential even thereafter if the interests of justice so require.

**5.** *See, e.g.,* D.Conn.R. 12(f)(2) ("The clerk shall not provide information concerning the petit or

grand jurors to any person...."); M.D.N.C. R. 112(c)(2) ("The names, addresses, and telephone numbers of persons who have served as jurors may not be disclosed by the clerk's office without court permission."); Louisiana Code Crim. Proc.Ann. art. 408 (West 1981); Michigan Stat. Ann. § 27A.1321 (Callaghan 1986); Oklahoma Stat.Ann. tit. 38 § 24 (West 1958); Texas Rev. Civ.Stat.Ann. art. 2098 (Vernon 1964). We are neither deciding, nor intimating, a view about the constitutionality of such plans in this opinion.

termines that the interests of justice so require. Absent that determination, the governing rule in the District of Massachusetts makes the juror identities publicly available information.[6]

### IV. *Meaning of Interests of Justice Standard*

Were we dealing with a matter of general trial procedure, we might construe the phrase "if the interests of justice so require" as tantamount to conferring upon each district judge virtually unbridled discretion to do as he or she thinks best. But a decision to impound the names and addresses of jurors is not an ordinary procedural matter.[7] Where, for example, similar interests of justice phraseology governed the withholding of juror names in a Mississippi state court trial, the state high court held that "only in rare and exceptional cases should a presiding judge sequester or keep secret the names of jurors drawn from the jury box." *Valentine v. State,* 396 So.2d 15, 17 (Miss.1981). Absent specific reasons, the Supreme Court of Colorado has likewise refused to permit a trial judge to withhold juror names and addresses under a comparable statute. *People v. Vigil,* 718 P.2d 496, 500 (Colo.1986).

The above state cases dealt with the withholding of juror names and addresses prior to trial, where issues of jury tampering and publicity affecting defendants' fair-trial rights may collide with the desires of parties to investigate jurors' backgrounds. *See also Swindle v. State,* 502 So.2d 652, 654–55 (Miss.1987) (Jury tampering). Post-trial requests for juror names raise a somewhat different mix of issues. Nonetheless, at any stage a decision to withhold juror identities raises difficult questions. Thus,

like the Mississippi and Colorado courts, we construe the interests-of-justice standard as requiring that the trial court find specific and convincing reasons why, in the particular case, the juror identities are required to be withheld. We also agree with the Mississippi court that the "interests-of-justice" standard means that withholding should occur only in an exceptional case. *Valentine v. State,* 396 So.2d at 17.

This narrow reading of the interests-of-justice standard is even more strongly indicated by the following prudential rule recently reiterated by the Supreme Court:

> It is our settled policy to avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question. *Gomez v. United States,* [490 U.S. 858, ——] 109 S.Ct. 2237, 2241 [104 L.Ed.2d 923] (1989).

Withholding the names of trial jurors from press or public, after the trial has terminated, involves a clash of constitutionally protected interests. On the one hand, impounding juror names implicates the press's First Amendment right of access to criminal trials. *See Press Enterprise Co. v. Superior Court,* 478 U.S. 1, 8–9, 106 S.Ct. 2735, 2740–41, 92 L.Ed.2d 1 (1986) (*Press Enterprise II*). On the other hand, disclosure may implicate the defendant's Sixth Amendment right to a fair trial. *See Sheppard v. Maxwell,* 384 U.S. 333, 362–63, 86 S.Ct. 1507, 1522–23, 16 L.Ed.2d 600 (1966); *In re Globe Newspaper Co.,* 729 F.2d 47, 52–53 (1st Cir.1984). Also, the jurors themselves have an interest in having their privacy protected. *See Press Enterprise Co. v. Superior Court,* 464 U.S. 501, 510–13, 104 S.Ct. 819, 824–26, 78 L.Ed.2d 629 (1984) (*Press Enterprise I*).

---

**6.** While the Jury Selection and Service Act of 1968 refers to the "names" of jurors, we construe it to encompass their addresses also. *See In re Baltimore Sun Co.,* 841 F.2d 74, 75 (4th Cir.1988). *Cf. People v. Vigil,* 718 P.2d 496, 500 (Colo.1986). In the case of many familiar names, an address as well as the name is necessary to identify the individual. We think, therefore, that addresses as well as names are presumptively available to the public under the District of Massachusetts jury plan. Addresses as well as names may be withheld by court

order where the interests of justice so require, *e.g.,* where security considerations or matters of similar import are involved.

**7.** We add that neither is it a matter as to which it would be sensible to permit each judge to adopt his or her own policy. Unless an overall general policy exists, the jurors, the press and the public would be capriciously subject to different treatment depending upon which judge presides.

The Supreme Court has firmly established that the First Amendment protects the right of press and public to attend criminal proceedings, together with the "right to gather information". *Branzburg v. Hayes,* 408 U.S. 665, 681, 92 S.Ct. 2646, 2656, 33 L.Ed.2d 626 (1972); *Richmond Newspapers v. Virginia,* 448 U.S. 555, 576, 100 S.Ct. 2814, 2826–27, 65 L.Ed.2d 973. This right has been found to include access to trial testimony of minor sex offense victims, *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); access to voir dire proceedings, *Press Enterprise I,* 464 U.S. at 501, 104 S.Ct. at 819–20, and access to a pre-trial criminal hearing, *Press Enterprise II,* 478 U.S. at 1, 106 S.Ct. at 2735–37. In addition, this court has extended the Supreme Court's analysis to find a First Amendment right to attend bail hearings. *In re Globe Newspaper Co.,* 729 F.2d 47 (1st Cir.1984).

These decisions have been rooted in the historic common law public character of criminal proceedings since the Norman Conquest in England and the United States Constitution as an "indispensable attribute of an Anglo–American trial." *Richmond Newspapers,* 448 U.S. at 569, 100 S.Ct. at 2823. The Supreme Court has identified the following purposes which open justice serves: assuring that proceedings are conducted fairly; discouraging perjury, misconduct of participants, and biased decisions; prophylaxis as an outlet for community hostility and emotion; ensuring public confidence in a trial's results through the appearance of fairness; inspiring confidence in judicial proceedings through education regarding the methods of government and judicial remedies. *Id.* at 571–72, 100 S.Ct. at 2824–25; *Press Enterprise I,* 464 U.S. at 508–09, 104 S.Ct. at 823–24; *In re Reporters Comm. for Freedom of the Press,* 773 F.2d 1325, 1336–37 (D.C.Cir. 1985) (Scalia, J.).

To be sure, access to jurors' lists is distinguishable from the situations above, because the juror names and addresses are collateral information kept by the court for its necessary administrative purposes, rather than being court proceedings or records of such proceedings. There is, moreover, clearly no public right of access to the jurors' deliberations themselves. Nevertheless, many of the purposes listed above which open justice serves are equally served by access to the identities of the jurors. Knowledge of juror identities allows the public to verify the impartiality of key participants in the administration of justice, and thereby ensures fairness, the appearance of fairness and public confidence in that system. It is possible, for example, that suspicions might arise in a particular trial (or in a series of trials) that jurors were selected from only a narrow social group, or from persons with certain political affiliations, or from persons associated with organized crime groups. It would be more difficult to inquire into such matters, and those suspicions would seem in any event more real to the public, if names and addresses were kept secret. Furthermore, information about jurors, obtained from the jurors themselves or otherwise, serves to educate the public regarding the judicial system and can be important to public debate about its strengths, flaws and means to improve it. Although the district judge here assumed that the Globe sought access solely to inquire into the deliberative process, other avenues of inquiry are conceivable. Juror bias or confusion might be uncovered, and jurors' understanding and response to judicial proceedings could be investigated. Public knowledge of juror identities could also deter intentional misrepresentation at voir dire.

On the other side, the press should recognize, as no doubt many reporters do, that a special historical and essential value applies to the secrecy of jury deliberations which is not applicable to other trial and pre-trial proceedings. Clearly, there is *no* ordinary public right to "know" what occurs in the jury room. It is undisputed that the secrecy of jury deliberations fosters free, open and candid debate in reaching a decision. It has therefore been a common and, we believe, wise custom for trial judges to advise jurors, as did the judge in this case, that they are not only

free to refuse to disclose what went on in the jury room, but that they may well think it better and more prudent to decline to discuss what has occurred.[8] The Supreme Court has stated: "Freedom of debate might be stifled and independence of thought checked if jurors were made to feel that their arguments and ballots were to be freely published to the world … No doubt the need is weighty that conduct in the jury room shall be untrammeled by the fear of embarrassing publicity." *Clark v. United States*, 289 U.S. 1, 13, 53 S.Ct. 465, 468, 77 L.Ed. 993 (1933) (Cardozo, J.). *See also United States v. Harrelson*, 713 F.2d 1114 (5th Cir.1983) (upholding constitutionality of ban on inquiry into specific vote of jurors other than the juror being interviewed); *Press Enterprise II*, 478 U.S. at 8–9, 106 S.Ct. at 2740 ("Although many governmental processes operate best under public scrutiny, it takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly."); *United States v. Franklin*, 546 F.Supp. 1133 (N.D.Ind.1982).

In addition, jurors summoned from the community to serve as participants in our democratic system of justice are entitled to safety, privacy and protection against harassment. Where a juror may reasonably fear retaliation from criminal defendants, jury anonymity promotes impartial decision-making. *United States v. Scarfo*, 850 F.2d 1015, 1023 (3d Cir.), *cert. denied*, 488 U.S. 910, 109 S.Ct. 263, 102 L.Ed.2d 251 (1988); *United States v. Edmond*, 730 F.Supp. 1144, 1146 (D.D.C.1990). This court has also stated in a different context:

Permitting the unbridled interviewing of jurors could easily lead to their harassment, to the exploitation of their thought processes, and to diminished confidence in jury verdicts, as well as to unbalanced trial results depending unduly on the relative resources of the parties.

*United States v. Kepreos*, 759 F.2d 961 (1st Cir.), *cert. denied*, 474 U.S. 901, 106 S.Ct. 227, 88 L.Ed.2d 227 (1985). As the Supreme Court has recognized, protecting jurors' privacy interests also implicates the integrity and reputation of the judicial process: "The State has a similar interest in protecting juror privacy, even after trial—to encourage juror honesty in the future—that almost always will be coextensive with the juror's own privacy interest." *Press Enterprise I*, 464 U.S. at 515, 104 S.Ct. at 827 (Blackmun, J., concurring).

No federal court of appeals has yet passed on the right of access to juror names and addresses following a trial. The courts of appeals have, however, passed on the right to such information during trial—with different results.

In *United States v. Gurney*, 558 F.2d 1202 at 1210 & n. 12 (5th Cir.1977), *reh'g denied*, 562 F.2d 1257 (5th Cir.1977), *cert. denied*, 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978), decided before *Richmond Newspapers* and subsequent Supreme Court free press cases, the Fifth Circuit ruled that the press's First Amendment right of access extends only to information already part of the public record, which did not include the jury list. The court found that the district judge had discretion to restrict access to the jury list both to ensure a fair and orderly trial, and in accordance with "well-established practice" to protect the privacy of jurors in a highly publicized trial. *See also United States v. Edwards*, 823 F.2d 111, 120 (5th Cir.), *reh'g denied*, 828 F.2d 772, *cert. denied*, 485 U.S. 934, 108 S.Ct. 1109, 99 L.Ed.2d 270 (1988) ("The usefulness of releasing juror names appears to us highly questionable."); *Gannett Co., Inc. v. State of Delaware*, 571 A.2d 735 (Del.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1947, 109 L.Ed.2d 310 (1990) (First Amendment does not require announcement of juror names during a highly publicized trial).

More recently the Court of Appeals for the Fourth Circuit has held, in light of *Press Enterprise I*, that even in the case of highly publicized trials, the juror names,

---

**8.** We express here no opinion on what, if any, limitations a trial court may properly impose on disclosure by one juror of remarks made by another in the course of jury deliberations. *See supra*, note 2.

and addresses for identification, must both be made public. Although applying a First Amendment analysis, the court explicitly stated: "We see no need to and do not base our decision on the First Amendment." *In re Baltimore Sun Co.*, 841 F.2d at 75 n. 4. The court reasoned that, historically, jurors in small communities were known on sight; it assumed that release of juror names to the press today, and their potential broadcast throughout the community or nation, in principle raised no different issue, and it concluded that such release is "an application of what has always been the law." 841 F.2d 74, 75 (4th Cir.1988). The court further found that "the risk of loss of confidence of the public in the judicial process is too great to permit a criminal defendant to be tried by a jury whose members may maintain anonymity." *Id.* at 76. *A fortiori*, where the trial has ended and concern about orderly proceedings is no longer relevant, the Fourth Circuit's analysis would seem to lead that court to support post-verdict access to juror identities. *See also United States v. Doherty*, 675 F.Supp. 719 (D.Mass.1987), *aff'd in part, rev'd in part on other grounds*, 867 F.2d 47 (1st Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 3243, 106 L.Ed.2d 590 (1989) (newspapers had First Amendment right of access after trial and verdict to juror identities); *Journal Publishing Co. v. Mechem*, 801 F.2d 1233, 1236–37 (10th Cir.1986) (district court's order prohibiting press interviews with jurors after controversial civil trial, without a compelling reason, was unconstitutionally overbroad).

Also related to the present asserted right of access to juror identities is the common law right of access to judicial records. The Supreme Court has recognized a historically based common law right to inspect and copy judicial records and documents. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1311–12, 55 L.Ed.2d 570 (1978). First Amendment policy concerns underlie this common law right of access to government information. *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir.1986) ("The common law presumption that the public may inspect judicial records has been the foundation on which the courts have based the first amendment right of access to judicial proceedings."); *see also State ex rel. Morke v. Donnelly*, 155 Wis.2d 521, 455 N.W.2d 893 (1990); *State ex rel. Youmans v. Owens*, 28 Wis.2d 672, 677, 137 N.W.2d 470, 472–74 (1965), *modified on other grounds*, 28 Wis.2d 685a, 139 N.W.2d 241 (1966) (compelling access to investigation of police department based on newspaper publisher's intent to publish information concerning the operation of government). In *Warner Communications*, the Supreme Court stated: "It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents," subject, however, to courts' supervisory power to deny access where court files might become a "vehicle for improper purposes." 435 U.S. at 597–98, 98 S.Ct. at 1312 (footnotes omitted). The Supreme Court noted that the contours of this common law right have not been precisely delineated, but found it was agreed that the access decision is "one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Warner Communications*, 435 U.S. at 599, 98 S.Ct. at 1312–13 (footnote omitted).

Finally, it is relevant to note the argument made by the district court below. In effect, the court feared that a trial may be significantly less fair when a juror may deliberate with an eye towards what some other juror might report in the press or on national television.[9] And, the court felt

---

9. The public obviously has an important interest in knowing (and learning through the press about) the details of a trial and the trial's procedures. *See Press Enterprise Co. v. Superior Court*, 478 U.S. 1, 8–9, 106 S.Ct. 2735, 2740–41, 92 L.Ed.2d 1 (1986). The defendant, however, has a "fair trial" interest in not having his guilt or innocence decided by a juror who deliberates with an eye towards what some other juror may say about him in the press or on national television. Where the practice at issue is one of disclosing juror identity after a trial, the clash among these interests is muted. On the one hand, a restriction that simply does not make

that asking jurors not to talk about deliberations, while at the same time handing out their names and addresses to the press, even against their will, sent a "mixed message" about the desirability of such behavior.

As the above discussion indicates, it is not easy to draw a precise line as to when the federal constitution requires juror names and addresses to be revealed and when not. At different times the public interest will balance out in different directions. We need not, however, and do not, attempt to draw that line here. It is enough to observe that if we construed the "interests-of-justice" standard in § 10(c) of the District of Massachusetts jury plan to confer unlimited discretion upon individual judges to withhold juror identities, we would have to try to balance these, and other considerations, and try to draw that line. *Gomez v. United States*, 109 S.Ct. at 2240. The same result would follow if we construed § 10(c)'s interests-of-justice requirement to allow impoundment of juror identities for reasons less serious than a substantial threat to the administration of justice.

■ Given, therefore, the Supreme Court's "settled policy" to avoid interpreting laws so as to raise a substantial constitutional issue, we must ask if "a reasonable alternative interpretation" exists which "poses no constitutional question." *Id.* The answer, of course, is "yes." As the mentioned state courts have done in like circumstances, it is altogether reasonable to construe the § 10(c) interests-of-justice exception as contemplating the withholding of juror identities only upon a finding of exceptional circumstances peculiar to the case. Such circumstances include a credible threat of jury tampering, a risk of personal harm to individual jurors, and other evils affecting the administration of justice, but do not include the mere personal preferences or views of the judge or jurors.[10]

In emphasizing that the norm under the local plan is to make juror names and addresses public, we realize that many present and past jurors could be troubled by our seeming indifference to their desire for personal privacy. Jurors, after all, are citizen soldiers; unlike judges and court personnel, they are not full-time professionals. At first glance it will seem unfair that, in addition to giving of their time and talent, they may, in publicized cases, be forced to run a press gauntlet and have their identities exposed to a public which they might fear will contain a few vengeful or unbalanced persons. But there are several answers to this: first, jurors may avoid many problems by flatly refusing press interviews when approached. Second, while privacy concerns following a publicized trial are real—and may understandably include some nervousness about personal security—these unfocused fears must be balanced against the loss of public confidence in our justice system that could arise if criminal juries very often consisted of anonymous persons. While anonymity

juror identities available interferes less directly with the First Amendment type interests than a restriction that *prohibits* the press from obtaining the information on its own (or from printing it). Yet, at the same time, a restriction that simply does not make information available seems only marginally helpful in protecting the defendant's Sixth Amendment type interests given the ability of the press to find the jurors on its own and the power of the court to urge the jurors not to speak to the press about their deliberations.

Though muted, a clash of important interests of constitutional dimension nonetheless exists. One can understand a court's reluctance to present jurors with the mixed message: "Don't talk to the press about your deliberations, but I shall give the reporters your names and addresses." And, one can understand the reporter's

frustration when presented with the opposite message: "You can talk to the jurors but only if you can find them." How, at a constitutional level, this court should resolve the conflicting values is a matter that we need not now decide; nor, given the language of the Massachusetts plan, are we likely to have to decide the matter soon.

**10.** As noted in an earlier case, even First Amendment rights must give way to a defendant's right to a fair trial. *See In re Globe Newspaper Co.*, 729 F.2d at 52. Similarly, First Amendment rights may have to bow to a court's needs to protect its essential processes, including the jury system, from violence, fraud and other influences that threaten the objectivity and independence of jurors.

is acceptable in the exceptional case where there is a particular need for it, the prospect of criminal justice being routinely meted out by unknown persons does not comport with democratic values of accountability and openness. Jurors may be citizen soldiers, but they are soldiers nonetheless, and like soldiers of any sort, they may be asked to perform distasteful duties. Their participation in publicized trials may sometimes force them into the limelight against their wishes. We cannot accept the mere generalized privacy concerns of jurors, no matter how sincerely felt, as a sufficient reason for withholding their identities under the interests-of-justice standard.

## V. *Conclusion*

We therefore hold that, given the absence here of particularized findings reasonably justifying non-disclosure, the juror names and addresses must be made public. *See United States v. Doherty*, 675 F.Supp. 719 (D.Mass.1987) (concluding First Amendment requires disclosure of juror identities, but postponing disclosure for one week to protect juror privacy); *United States v. Harrelson*, 713 F.2d 1114, 1118 (5th Cir.1983); *United States v. Franklin*, 546 F.Supp. 1133, 1145 (N.D.Ind.1982). The district court's order here went too far as it cut off access to names and addresses simply because the jurors expressed a preference for anonymity and because the judge was concerned lest some jurors ignore his advice not to reveal what took place in the jury's deliberations. No specific findings of special circumstances to justify nondisclosure were made and all parties concede that the personal safety of jurors was not an issue. While we understand, and can sympathize with a juror's desire in a publicized criminal case such as this was to remain anonymous, the juror's individual desire for privacy is not sufficient justification by itself to withhold his or her identity. Nor is the judge's general belief that, as a matter of policy, it would be better to keep the names and addresses private. Accordingly, we hold that the court's non-disclosure order exceeded its authority. We direct that the order be withdrawn and the names and addresses be made available to the Globe reporters.

We emphasize that nothing said herein is meant to encourage individual jurors to grant interviews. Nothing compels or encourages a juror to be interviewed. To the contrary, a juror may well feel it is better and fairer to his or her fellows to decline to discuss what has occurred, and, in particular, to decline to reveal his fellow juror's comments during deliberations. Jury service can be burdensome enough without the publicizing of heartfelt discussions taking place in what most people properly regard as confidential circumstances.

We add that—while individual judges are limited, under the interests-of-justice standard set out in the District of Massachusetts plan, to withholding names and addresses in exceptional circumstances as described above—this court will, of course, defer to a district judge's reasonable findings as to whether there is, in fact, a legitimate threat of harm to jurors or of other evils, such as jury tampering, which warrant the withholding of juror names and addresses. Findings in this regard will stand unless clearly erroneous in respect to factual findings, or an abuse of discretion insofar as the legal standard is applied to the facts. *See, e.g., Independent Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.*, 864 F.2d 927, 929 (1st Cir.1988). Similarly, we will not lightly second-guess the district judge's essential role as trial administrator when he or she makes reasonable practical decisions balancing some of the competing considerations discussed herein in light of the realities of the particular case.

As we are confident that the district court will comply with our directions, we withhold at this time the actual issuance of the writ of mandamus. *Nasuti v. Scannell*, 906 F.2d 802 (1st Cir.1990).

*So ordered.*