**UNITED STATES of America,**

v.

**Alphonso Michael ESPY, Defendant.**

**No. CRIM. A. 97–0335 RMU.**

United States District Court,
District of Columbia.

Dec. 4, 1998.

Donald C. Smaltz, Alexandria, VA, Robert W. Ray, Brooklyn, NY, William S. Noakes, Jr., Detroit, MI, Barry Coburn, Washington, DC, Adrienne R. Baron, Office of Independent Counsel, Alexandria, VA, for the Government.

Theodore V. Wells, Jr., Lowenstein, Sandler, Kohl, Fisher and Boylan, Roseland, NJ, Reid H. Weingarten, Rhonda M. Rivens, Andrea C. Evans, Steptoe and Johnson, Washington, DC, for Defendant.

Kevin Taylor Baine, Williams & Connolly, Washington, DC, for Petitioner Washington Post Company.

## MEMORANDUM OPINION AND ORDER

URBINA, District Judge.

### Sealing List of Jurors' Names for a Period of Seven Days Following the Verdict

For the reasons set forth below, the court hereby orders that the names of the jurors in the above-captioned matter be sealed for a period of seven days following the announcement of the jury's verdict. The list of jurors' names will be unsealed as of the opening of business on Thursday, December 10, 1998.

## I. BACKGROUND

At approximately 4:30 p.m. on December 2, 1998, after two days of deliberations and more than two months since the commencement of trial, the jury returned its verdict in this high-profile case in which Alphonso Michael Espy was acquitted of all charges stemming from activities alleged to have occurred during his tenure as the former Secretary of Agriculture. After the court received the jury's verdict in open court, the judge accompanied the jurors to the jury room to thank them personally for their lengthy service. At that time, the jurors indicated to the judge that they did not wish to speak or have their names disclosed to the press.

Subsequent to the jury's verdict, the court has received numerous telephone calls from members of the press requesting that the court release the names of the jurors. Having considered the particular facts of this case and the relevant law, the court con-

cludes that the best solution to accommodate the competing interests of the jurors and the press is to keep the names of the jurors under seal for a period of seven days following the return of the verdict.

## II. DISCUSSION

The court here is faced with an issue that requires it to address the inherently conflicting interests of the press to exercise its First Amendment right of access to criminal proceedings and of the individual jurors in this case to protect their right to personal privacy. The specific issue of the press's right to post-verdict access to the names of jurors has never been squarely addressed by this circuit. The court has found guidance for its ruling, however, in the opinions of other district courts and courts of appeal.

There can be no question but that the press has a right under the First Amendment of the United States Constitution to gather information, and that this right includes the right of access to criminal proceedings. *See Press–Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984). The First Amendment rights of the press, however, are not absolute, and they may be outweighed in certain instances by equally compelling but countervailing interests. *See United States v. Doherty*, 675 F.Supp. 719, 723 (D.Mass.1987), *cited with favor in In re Globe Newspaper Co.*, 920 F.2d 88, 96, 98 (1st Cir.1990); *United States v. Butt*, 753 F.Supp. 44 (D.Mass.1990), *In re Indianapolis Newspapers, Inc.*, 837 F.Supp. 956 (S.D.Ind.1992). One such interest is to protect the privacy rights of individuals who have served as jurors. *See id.* at 724. Another is the "coextensive" interest of the state, or in this case the District of Columbia, to protect jurors' rights to privacy. *See id.* Faced with an issue that implicates such competing interests, none of which are absolute, the court must balance the interests presented and develop a solution that best accommodates those interests. *See id.* at 724–25.

The right of the press, and through it the public, to have open access to criminal proceedings is firmly rooted in our Constitution. *See In re Globe Newspaper Co.*, 920 F.2d at 94. Many of the purposes served by open access to criminal proceedings are also served by recognizing the interest and putative right of the press to have access to the names of jurors following a verdict. *See id.* Notably, providing access to jurors' names "allows the public to verify the impartiality of the key participants in the administration of justice, and thereby ensures fairness, the appearance of fairness and public confidence in [the legal] system." *Id.* In addition, "information about jurors ... serves to educate the public regarding the judicial system and can be important to public debate about its strengths, flaws and means to improve it." *Id.*

On the other hand, "[i]t is undisputed that the secrecy of jury deliberations fosters free, open and candid debate in reaching a decision." *Id.* Furthermore, "[p]ermitting the unbridled interviewing of jurors could easily lead to their harassment, to the exploitation of their thought process, and to diminished confidence in jury verdicts." *Id.* at 95.

Mindful of the competing interests implicated here, the court concludes that it is in the best interests of justice to temporarily seal the names of the jurors in this case for a period of seven days following the return of the jury's verdict. This limitation on the interests of the press is narrowly tailored in time and scope and will not ultimately thwart the purposes served by providing open access to criminal proceedings. At the same time, the seven-day delay in releasing the names will allow the jurors an uninterrupted opportunity "to catch up on precious time spent away from family, in the service of society" and "to resume [their] normal round of activities." *Doherty*, 675 F.Supp. at 725. It will also provide each juror with "a short breathing space to reflect on the experience of jury service and, after consultation with family and friends, determine what, if anything, the juror wishes to discuss with the press." *Id.*

To the extent that the Application of the Washington Post Company for Access to Names and Addresses of Petit Jurors constitutes a request that the court immediately

unseal the record containing the jurors' names, that application is denied.

Accordingly, it is this 4th day of December, 1998, hereby

ORDERED that the list of jurors' names will be kept under seal for seven days following the return of the jury's verdict; and it is

FURTHER ORDERED that this sealing order will be lifted as of the opening of business on Thursday, December 10, 1998.

SO ORDERED.