[No. A091294. First Dist., Div. Two. Dec. 18, 2000.]

DIANE A. BELLAS, as Public Defender, etc., Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

638

COUNSEL

Harold G. Friedman, Chief Assistant Public Defender, and Charles M. Denton, Assistant Public Defender, for Petitioner.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Christina V. Kuo and Catherine A. Rivlin, Deputy Attorneys General, for Respondent.

OPINION

RUVOLO, J.—

I.

This petition follows a postconviction order by the trial court holding petitioner, the Public Defender of Alameda County (Public Defender), in contempt for refusing to return to the court defense copies of juror question-naires prepared by the venire in the criminal prosecution of *People v. Brown* (Super. Ct. Alameda County, No. H-26122).[1]

The eight-page questionnaires had been completed before the oral ques-tioning phase of jury selection commenced. Copies were distributed to the trial judge, prosecuting attorney, and defense counsel, who used them during jury selection. After trial, and at the conclusion of defendant's sentencing hearing, the court ordered these copies returned to the clerk of the court for sealing.

We conclude the trial court erred in issuing the contempt order based on the refusal by petitioner to return the juror questionnaires. The First

---

[1]The appeal from that conviction, *People v. Brown* (A091940), is currently pending before Division One of this court.

Amendment of the United States Constitution guaranteeing public access to judicial proceedings overwhelms any countervailing privacy interests of prospective jurors as to the content of questionnaires they complete. Where trial courts wish to protect their content from public observation, the constitutionally permitted procedure mandates that the judge advise members of the venire at the time the questionnaires are distributed that, upon completion, they will become public records accessible to anyone, and as an alternative to writing in sensitive personal data, jurors can answer those questions on the record in chambers with counsel present. Even in that event, trial judges should take care that the individual prospective juror is not given either explicit or implicit assurances that the transcript of in camera questioning will be protected from public disclosure in all instances.

Moreover, any expectation of privacy prospective jurors may have in the content of their questionnaires completed during jury selection does not extend to a criminal defendant and counsel. As we explain, because the *raison d'être* of juror questionnaires is to assist both sides and counsel in the selection of a fair and impartial jury, juror privacy is not advanced by "harvesting" them from the confidential files of the Public Defender's office when their content was purposefully divulged to defense counsel.

As to the personal identifying information of trial jurors, the law provides limited privacy protection from the defendant, defense counsel, and the public by requiring the redaction of their personal juror identifying information (names, addresses, and telephone numbers) from the court's record, including questionnaires, unless good cause for access is shown on noticed motion. Members of the venire who were not sworn as trial jurors are entitled to have their names kept confidential only upon a finding of a compelling interest against disclosure. Because defense counsel agreed to redact personal juror identifying information from defense copies of questionnaires, we likewise conclude the trial court erred in requiring the questionnaires returned in order to protect the disclosure of this data.

## II.

On March 30, 2000, following a 17-day jury trial, Eliel Elpidio Brown was convicted of second degree murder in the Alameda County Superior Court. Prior to the commencement of jury selection,[2] each member of the venire was given an eight-page questionnaire to complete. In addition to the name of the prospective juror, the questionnaire requested detailed information concerning each prospective juror's educational background, work experience, prior jury experience, military experience, religious and political

---

[2]We use the term "jury selection" to mean the process by which inquiry is made as to the qualifications of persons to sit as fair and impartial jurors. Since a written questionnaire serves as an alternative to oral disclosure of the same information in open court, we view it as

affiliations, prior contacts with the law enforcement and the criminal justice system, affiliations with criminal law and victims' rights advocacy groups, information concerning the ownership and feelings about firearms, knowledge about the alleged event underlying the criminal complaint, and knowledge of the expected witnesses. Jurors were asked to disclose the names of family members, and information pertaining to each of them regarding their respective employment histories, contacts with law enforcement and the criminal justice system, affiliations with criminal law and victim rights advocacy groups, and their ownership of firearms. The questionnaire also asked what sources of news information the juror accessed, as well as what radio stations each typically listened to, and what television programs he or she watched most often.

A cover sheet from the trial department accompanied each questionnaire, explaining why the jurors were being requested to fill out a questionnaire as well as instructions as to how it should be completed. Most important to our analysis, the cover sheet explained: "The use of this questionnaire will shorten the process of jury selection and provide greater privacy for your answers. YOUR ANSWERS WILL BE USED ONLY IN THE SELECTION OF THIS JURY AND NOT FOR ANY OTHER PURPOSE. ANY FOLLOW-UP QUESTIONS TO SENSITIVE AREAS COVERED IN THE QUESTIONNAIRE WILL BE CONDUCTED OUTSIDE THE PRESENCE OF THE OTHER JURORS, WHEN REQUESTED." (Original underscoring.) The last paragraph of the questionnaires assures the prospective jurors "[t]he questionnaires and copies will be collected by the Court, and those submitted by jurors selected to serve in the trial will be maintained by the Court, under seal and in confidence, unless otherwise ordered."

The court sentenced the defendant on May 18, 2000. At the conclusion of the sentencing, the trial judge requested the deputy public defender who represented defendant at trial to return copies of the juror questionnaires still in counsel's possession, including those completed by "excess jurors." Defense counsel refused, explaining that the questionnaires had been highlighted and notes made on many of them, which were then used by counsel in making jury selection decisions. As such, counsel stated that the questionnaires were attorney work product that needed to be preserved for potential use by defendant's appellate counsel.

The court disagreed, noting that the law "seems clear" that the Legislature and courts wish to protect juror privacy. As an accommodation to defense counsel, the court expressed a willingness to place the defense copies of the

synonymous with, and a part of, voir dire. (See *Copley Press, Inc. v. Superior Court* (1991) 228 Cal.App.3d 77 [278 Cal.Rptr. 443].)

questionnaires under seal, which would then become part of the court's record on appeal. The court made a "direct order" to defense counsel to produce the questionnaires, and the matter was continued to May 25 to enable counsel to perform some additional legal research and to check with his office's "appellate people."

On May 25, 2000, defense counsel appeared as ordered. He was accompanied by two members of the Public Defender's office, including petitioner Diane A. Bellas, Public Defender of Alameda County. Defense counsel was sworn as a witness and testified that he was in possession of approximately 65 questionnaires completed by the jury panel, of whom perhaps two-thirds were questioned orally during jury selection. The only identifying information contained on the questionnaires was the juror's name. No addresses or telephone numbers were recorded.

Counsel stated he was not told that all of the questionnaires would have to be returned at the conclusion of the trial. In fact, in none of the 10 or so cases in which defense counsel used juror questionnaires had counsel ever been asked to return them to the court at the conclusion of trial. Therefore, he highlighted certain information contained on the questionnaires and made comments and recorded his impressions on approximately one-half of them, and included juror "rankings" on all of the questionnaires.

Petitioner was then sworn and testified about the procedures used by her office for the handling and storage of case files. She assured the court that the contents of the files are not disclosed to anyone, with the exception of appellate counsel, and even then, written client consent is required. Petitioner offered that her office would comply with an order that the questionnaires be maintained in confidence, and would require appellate counsel to obtain an order from the court before they would be released. She likewise agreed to comply with an order requiring that personal juror identifying information be redacted from the copies.

In response to a question from the trial court asking petitioner to illustrate the difference between retaining the questionnaires under seal in the Public Defender's office files versus in the court files, petitioner explained there was a need to retain the integrity of the entire file for the potential use of appellate counsel including a possible inquiry into whether the defendant had been provided with effective assistance of counsel at trial, including jury selection.[3] She referred to the Public Defender files as "sacrosanct" and expressed that she was "loathe to begin separating out from our files portions

---

[3] No *Batson/Wheeler* motion had been made during jury selection, nor had defense counsel exhausted his preemptory challenges. (*Batson v. Kentucky* (1986) 476 U.S. 79 [106 S.Ct.

that under the law we believe are a rightful part of our public defender case file."

At the conclusion of testimony and argument, the court again ordered petitioner to return the questionnaires, offering to allow defense counsel to redact any portions of the questionnaires needed to protect attorney work product, and to place the returned copies under seal in the court's file. In doing so, the court noted that the order was being made solely out of concern for "juror's privacy and confidentiality." When counsel again refused, the court found petitioner[4] to be in direct contempt under Code of Civil Procedure section 1219, and ordered her remanded into the custody of the sheriff, staying the remand order until June 1, 2000.

A petition for writ of habeas corpus challenging the trial court's contempt finding and order was filed on May 31, 2000. We stayed enforcement of the contempt order and issued an order to show cause.[5]

### III.

### A.

■ Unquestionably, one of the most significant decisions of the last 20 years concerning juror privacy rights and public access to juror information is the United States Supreme Court opinion in *Press-Enterprise Co. v. Superior Court of Cal.* (1984) 464 U.S. 501 [104 S.Ct. 819, 78 L.Ed.2d 629] (*Press-Enterprise*), in which the high court explicitly exalted the right of public access to criminal proceedings over the privacy right of jurors generally. The trial judge in a California murder trial had opened to the public " 'general voir dire' " but closed the proceedings for that portion of jury selection dealing with " 'death qualifications' " and other " 'special areas.' " The voir dire consumed six weeks, and all but three days were closed to the public. (*Id.* at p. 503 [104 S.Ct. at p. 820].)

After the jury was sworn in a criminal case, Press-Enterprise Co. sought the release of the transcript of the closed portion of jury selection. Both the prosecutor and defense counsel objected, pointing to the fact that the closed

---

1712, 90 L.Ed.2d 69]; *People v. Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748].)

[4]The parties agreed that because the questionnaires were being withheld under policy established by the Public Defender and upon her instructions, she was the proper person subject to the contempt finding and order. We note parenthetically that the hearing proceeded in a dignified atmosphere, and without rancor.

[5]In light of the fact that petitioner is not presently incarcerated, we treat the petition as one for writ of prohibition.

oral voir dire explored with the individual jurors " 'some personal problems . . . which could be somewhat sensitive as far as publication of those particular individuals' situations are concerned.' " (464 U.S. at p. 504 [104 S.Ct. at p. 821].) Defense counsel also added that the disclosure would violate the jurors' right of privacy inasmuch as they had answered questions under an " 'implied promise of confidentiality.' " (*Ibid.*)

After tracing the origins of public trials, including jury selection, to before the Norman Conquest, the high court gleaned from this historic record a presumption in constitutional law that the jury selection process be as open to the public as any other portion of a criminal trial. It noted openness not only provides accountability and raises the confidence that standards of fairness are being observed, but that public observation of criminal trials also inures to the benefit of the accused who has assurance through public participation that a fair trial is in progress. (*Press-Enterprise, supra*, 464 U.S. at p. 508 [104 S.Ct. at p. 823].) Finally, it articulated the standard against which courts were to test the decision to close any portion of jury selection: "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." (*Id.* at p. 510 [104 S.Ct. at p. 824].)

In applying this standard to the case before it, the United States Supreme Court noted that the alleged murder also involved the rape of the victim, and that it was therefore likely that portions of jury selection would "touch[] on deeply personal matters that person has legitimate reasons for keeping out of the public domain." (*Press-Enterprise, supra*, 464 U.S. at p. 511 [104 S.Ct. at p. 825].) In such cases, the court could conduct portions of the oral jury selection on the record in chambers with counsel present. In that way, the "constitutional values sought to be protected by holding open proceedings may be satisfied later by making a transcript of the closed proceedings available within a reasonable time." Making a transcript available was also deemed subject to a further order sealing a portion of the transcript or withholding the name of the involved juror. (*Id.* at p. 512 [104 S.Ct. at p. 825].)

In *KNBC-TV, Inc.* (*KNBC-TV, Inc. v. Superior Court* (1999) 20 Cal.4th 1178 [86 Cal.Rptr.2d 778, 980 P.2d 337] (*KNBC*)), the California Supreme Court applied *Press-Enterprise* and earlier United States Supreme Court precedent to the question of whether, like criminal trials, civil trials are constitutionally required to be open to the public. In that case, the trial court had excluded the public and the media from attendance at all proceedings held outside the presence of the jury. After a thorough review of the high

court's decisions interpreting the mandate of public access contained in the First Amendment in the context of public access to criminal judicial proceedings, the court in *KNBC* concluded that, civil proceedings also are "presumptively open" and subject to the same limitations on closure. (*Id.* at pp. 1212, fn. 29, 1216-1217.)

The precise subject of public access to juror questionnaires was at issue in *Lesher Communications, Inc. v. Superior Court* (1990) 224 Cal.App.3d 774 [274 Cal.Rptr. 154] (*Lesher*). In *Lesher*, the trial court denied the print media access to jury questionnaires completed by members of the venire in a murder case. Division Four of this district stayed the trial while considering the question of whether the questionnaires must be disclosed. In issuing a writ of mandate, the appellate court concluded that juror questionnaires are as fully accessible to the public as are other phases of trial, including oral voir dire. For this reason, members of the venire were entitled to an admonition that they had a right to request an in camera hearing, in the presence of counsel and on the record, on sensitive matters required to be disclosed during jury selection, including questions asked on juror questionnaires. Following the mandate of *Press-Enterprise*, the court also reiterated that the transcript of any in camera or chambers questioning might be ordered sealed from public access.

Because no such admonition had taken place, and jury selection had not yet been completed, the court ordered upon remand that the trial court proceed in one of two alternative ways that balanced the requirement of public access, and the legitimate privacy interests of jurors. Either the trial court could afford prospective jurors the opportunity to fill out a new questionnaire which protected the jurors' legitimate interest in privacy, or the court could dismiss the entire venire and withhold the questionnaires which had been completed by the panel "in reliance on the understanding of confidentiality." (*Lesher, supra*, 224 Cal.App.3d at p. 778, fn. 1.)

However, as to the questionnaires themselves, the court endorsed the reasoning of a recently decided case affirming the right of access to juror questionnaires, *Copley Press, Inc. v. Superior Court\** (Cal.App.) (*Copley I*). Quoting *Copley I*, the *Lesher* court cautioned that in filling out the questionnaires, no " 'explicit or implicit promise of confidentiality should be attached to the information contained in the questionnaires; rather the veniremen shall be expressly informed the questionnaires are public records.' " (*Lesher, supra*, 224 Cal.App.3d at pp. 778-779.)

Thereafter, the California Supreme Court ordered the opinion in *Copley I* vacated and the matter considered anew in light of the subsequent filing of

---

*\*Reporter's Note: Review granted on December 13, 1990, S018022, and cause transferred to Court of Appeal, Fourth Appellate District, Division One with directions.

the opinion in *Lesher*. The Court of Appeal, pursuant to such direction, issued its opinion as modified in *Copley Press, Inc. v. Superior Court, supra,* 228 Cal.App.3d 77 (*Copley II*). The modified opinion in *Copley II* recognized that *Press-Enterprise* allows for some limitation on public access to juror information disclosed during voir dire, but noted that the closure of proceedings was required to be "as narrow[] as possible so that the salutary nature of openness can be preserved to the largest extent possible. [Citation.]" (*Id.* at p. 86.) Following *Lesher*, the court in *Copley II* explained that, to accomplish the proper balancing of public access and juror privacy, the "proper approach" was for trial courts to advise members of the venire that they had a right to disclose sensitive information in camera rather than writing their answers on the questionnaires. If requested, the court could then conduct oral questioning of the individual juror in chambers with counsel and the defendant present, followed by an order sealing the transcript of that in camera hearing if "a legitimate privacy interest warrants protection." (*Id.* at p. 87.)

In concluding that courts should otherwise provide public access to juror questionnaires for certain prospective jurors,[6] the *Copley II* court then reiterated its earlier warning that "[n]o explicit or implicit promise of confidentiality should be attached to the information contained in the questionnaires; rather the venirepersons shall be expressly informed the questionnaires are public records."

For our purposes, it is enough that these decisions make clear that the content of juror questionnaires are publicly accessible unless the reason for ordering them sealed outweighs the presumption of open access to records of judicial proceeding, the limitation on access is tailored as narrowly as possible, and the trial court's findings are articulated with enough specificity that a reviewing court can determine whether a confidentiality order was properly entered. Here, the trial court based its order, which sought to gather all prospective juror questionnaires and place them under seal in their

---

[6]As we have noted, the distribution and completion of questionnaires constitute part of jury selection, or voir dire (*Copley II, supra,* 228 Cal.App.3d at p. 89; see also *Zamudio v. Superior Court* (1998) 64 Cal.App.4th 24, 30 [74 Cal.Rptr.2d 765] (*Zamudio*)). Yet, the *Lesher* court distinguished the questionnaires completed by members of the venire who were never questioned orally during jury selection. As to those prospective jurors, the court stated that because the questionnaires were completed as a "prelude" to "voir dire," there was "no legitimate public interest in disclosure of . . . questionnaires" filled out by jurors who did not participate in oral voir dire. (*Lesher, supra,* 224 Cal.App.3d at p. 779.) In addition to failing to offer any persuasive analysis in support of this distinction, *Lesher* provides no guidance as to how a trial court and its staff might practically go about reconstructing who was asked questions, and thus whose questionnaires should be relinquished in response to a public request, which might be received some substantial time after trial is concluded.

entirety on generalized concerns about juror privacy, without making any finding of particularized and individual assessment of juror privacy needs. There was no weighing of the necessity for sealing against the exigencies of public access. Therefore, when tested against the showing required by *Press-Enterprise*, there was no content-based privacy rationale sufficient for the trial court in the case before us to order the removal of questionnaires from the Public Defender's files for the purposes of sealing them.

## B.

The controversy in this case is easier to resolve than that in *Press-Enterprise*, *Lesher*, or *Copley II*, for those cases involved questions of *public* access to information provided by potential jurors during the jury selection process in criminal cases. While a discussion of these authorities is imperative to our analysis, an important distinguishing feature here is that this case concerns continuing access to the content of juror questionnaires by *defendant and defense counsel*, and not simply access by the public.

Obviously, the very purpose for asking members of the venire to complete the questionnaire was to assist the parties and the court in picking a jury. For this simple reason, a fundamental understanding in completing the questionnaires was that the information disclosed necessarily would be made known to the parties and their respective counsel. The venire was told as much in the cover memorandum that accompanied the questionnaire: "In order to expedite jury selection, we have prepared this questionnaire to be completed before you are called into the courtroom. . . . [¶] The use of this questionnaire will shorten the process of jury selection . . . . You will be given an opportunity to further explain and clarify your answers when being questioned by the lawyers."

Submitting answers in writing allowed counsel and the court to review the jurors' answers in advance of oral questioning thereby avoiding the need to undertake the laborious task of asking every prospective juror each of the questions. Proceeding in this fashion in a murder trial undoubtedly saved both the members of the venire and the other trial participants an enormous amount of time and inconvenience in empanelling a jury. In completing the questionnaire, there could certainly be no expectation of juror privacy that would restrict defendant and defense counsel from having access to the questionnaires' contents.

Furthermore, the refusal by defense counsel to return the questionnaires was not simply an exercise in arrogance. Counsel expressed good and

sufficient reasons for retaining them. As clarified at the contempt hearing by trial counsel, their potential use by appellate counsel in framing issues for an eventual appeal, and his desire to have confirmation of tactical decisions made during the challenge phase of jury selection were sound justifications for retaining the questionnaires which inured to the interest of the defendant.[7] Finally, wishing to assuage any lingering concern the court may have had for the possibility of inadvertent unauthorized disclosure, petitioner explained in detail the procedures established in her office to ensure the integrity and confidentiality of the defense file in which the questionnaire copies would be reposed.

Therefore, apart from the question of public access, which itself barred the action taken below, defendant and defense counsel had a separate and independent right both to know the content of the questionnaires and to preserve them in their confidential files.  ▉   The only related, but different, question we must yet address is whether defense counsel nevertheless could be compelled to relinquish the questionnaires at the conclusion of trial because they contained information by which members of the jury or venire could be personally identified.

## C.

California statutory law has long recognized the public's right of access to judicial records. Code of Civil Procedure[8] section 124, enacted in 1872, states that "the sittings of every court shall be public." However, legislative concern for protecting juror identifying information was sparked in 1991, when news reports recounted that a criminal defendant convicted of murder, and who had made threats against attorneys and law enforcement personnel involved in his case, was found to have in his jail cell documents containing the addresses of several of the trial jurors. It was believed that the information was obtained by a private investigator hired by the defendant. (See Background Information, Sen. Judiciary Com., Sen. Bill No. 1299 (1991-1992 Reg. Sess.) pp. 4-5; County of L. A. Legis. Rep. Clancy Leland, letter to Sen. Bill Lockyer, Chair, Sen. Judiciary Com., Feb. 4, 1992.)

This incident led to the 1992 amendment of section 206, and the enactment of a new statute, section 237. (Stats. 1992, ch. 971, § 3, pp. 4598-

---

[7]We need not, and do not, decide the efficacy of defense counsel's work product privilege argument as an additional reason not to relinquish his copies of the questionnaires.

[8]All further undesignated statutory references are to the Code of Civil Procedure.

4599.) Former section 237 subdivision (a) provided that the names of "qualified jurors drawn from the qualified juror list for the superior court" were available to the public unless the trial court, upon request of the involved juror determined that the personal juror identifying information should be conditionally sealed based on a finding of a "compelling governmental interest." (*Id.*, subd. (b).) "Compelling governmental interest" was defined in the statute as the need for "protecting jurors from physical harm or the threat of physical harm." (*Ibid.*) Former sections 206 and 237 allowed for a procedure by which a criminal defendant could petition the court for disclosure of personal juror identifying information "for the purpose of developing issues on appeal or any other lawful purpose." (Stats. 1992, ch. 971, § 2, pp. 4597-4598.) Criminal sanctions were also provided in the event of violations of section 237. (Stats. 1992, ch. 971, § 3, pp. 4598-4599.)[9]

The following year, section 237 was amended. The 1993 amendment, introduced as Assembly Bill No. 1915, was spawned by the author's concern that "[c]itizens who are asked to serve as jurors should not be subject to possible harassment or physical harm when the media chooses to publish information by which the juror's identity may be determined." (Assem. Off. of Research, 3d reading analysis of Assem. Bill No. 1915 (1993-1994 Reg. Sess.) Apr. 28, 1993, p. 1.) Specifically, the amendment required trial judges to also advise jurors at the time of discharge of their right to seek the conditional sealing of juror identifying information. (Stats. 1993, ch. 632, § 2, p. 3722.) In the event access to personal juror identifying information was sought, the petitioner was required to personally serve all affected jurors with notice of the hearing at which the unsealing of their identifying information would be sought. (*Ibid.*)[10]

Two years later, the issue of protecting juror identifying information again caught the attention of the Legislature when it concluded there was a need to provide greater protection for the identity of jurors while still providing access to this information to defendants and interested members of the

---

[9]Former section 206 required trial judges to give the now familiar admonitions to jurors at the time of discharge that: 1) jurors have the absolute right to discuss or not discuss the deliberations or verdict with anyone, 2) if they choose, they may discuss these matters with representatives of the defendant so long as they consent and the contacts take place at a reasonable time and place, 3) any unreasonable nonconsensual contact should be reported to the court, and 4) any violation of the section would expose the persons in violation to sanctions. (§ 206, subds. (a)-(d).)

[10]The statute does not cast any light on the metaphysical question of how a petitioner who seeks the names and addresses of jurors can effect personal service on them before coming into possession of their identifying information.

public. In pursuit of that objective, a new amendment was enacted in 1995, requiring the automatic sealing of the court's record of juror identifying information: "[(a)](2) Upon the recording of a jury's verdict in a criminal jury proceeding, the court's record of personal juror identifying information, including names, addresses, and telephone numbers, shall be sealed until further order of the court as provided by this section." (Stats. 1995, ch. 964, § 3.)[11]

The preamble to the amendment (and to a modest conforming amendment to § 206) sang an unmistakable note of appreciation for those who answer the call to public duty by serving as trial jurors: "SECTION 1. The Legislature finds and declares that jurors who have served on a criminal case to its conclusion have dutifully completed their civic duty. It is the intent of the Legislature in enacting this act to balance the interests of providing access to records of juror identifying information for a particular, identifiable purpose against the interests in protecting the jurors' privacy, safety, and well-being, as well as the interest in maintaining public confidence and willingness to participate in the jury system." (Stats. 1995, ch. 964, § 1.)

Any lingering ambiguity as to just whose personal identifying information was to be routinely protected from unnecessary disclosure, and the manner by which trial courts were to effect this protection was eliminated the following year with the introduction of Senate Bill No. 2123 (1995-1996 Reg. Sess.). This latest amendment clarified that "personal juror identifying information" was limited to names, addresses, and telephone numbers of trial jurors as defined by section 194. (Stats. 1996, ch. 636, § 2.)[12] The amendment also helped solve difficulties encountered by court clerks and court reporters as to how that information was to be protected, specifically equating the term "sealing" with the removal, or redaction, of the juror identifying information from court records. (Stats. 1996, ch. 636, § 2.)

After Senate Bill No. 2123 was enacted, the portions of section 237 pertinent to this case were amended to read as follows: "(2) Upon the recording of a jury's verdict in a criminal jury proceeding, the court's record of personal juror identifying information of trial jurors as defined in Section

---

[11]The amendment also resolved the notice problem by requiring *the court* to give notice to the effected jurors of the petition to seek personal juror identifying information, leaving it to the petitioner only to give notice to the parties to the criminal proceeding.

[12]The statute allows for the sealing of personal juror identifying information of "qualified jurors" not serving as trial jurors, but only upon a trial court's finding that a "compelling interest" requires that the information be kept confidential. (§ 237, subd. (a)(1).)

194,[13] consisting of names, addresses, and telephone numbers, shall be sealed until further order of the court as provided by this section. [¶] (3) For purposes of this section, 'sealed' or 'sealing' means extracting or otherwise removing the personal juror identifying information from the court record." (Stats. 1996, ch. 636, § 2.)

Even this truncated history of section 237 clearly reveals that: 1) the harm the Legislature perceived from disclosure of personal juror identifying information was postverdict harassment and possible physical danger from those who obtained knowledge of the juror's name, address and telephone number; 2) the privacy interest to be protected was the right of the jurors to be left alone once their service was complete; 3) the class of jurors who needed protection was those who actually sat on the jury and participated in the verdict; and 4) the permissible means of protecting this limited right of confidentiality is to redact the personal juror identifying information from court records, including questionnaires.[14]

---

[13]Section 194 provides: "The following definitions govern the construction of this chapter:

"(a) 'County' means any county or any coterminous city and county.

"(b) 'Court' means the superior and municipal courts of this state, and includes, when the context requires, any judge of the court.

"(c) 'Deferred jurors' are those prospective jurors whose request to reschedule their service to a more convenient time is granted by the jury commissioner.

"(d) 'Excused jurors' are those prospective jurors who are excused from service by the jury commissioner for valid reasons based on statute, state or local court rules, and policies.

"(e) 'Juror pool' means the group of prospective qualified jurors appearing for assignment to trial jury panels.

"(f) 'Jury of inquest' is a body of persons summoned from the citizens before the sheriff, coroner, or other ministerial officers, to inquire of particular facts.

"(g) 'Master list' means a list of names randomly selected from the source lists.

"(h) 'Potential juror' means any person whose name appears on a source list.

"(i) 'Prospective juror' means a juror whose name appears on the master list.

"(j) 'Qualified juror' means a person who meets the statutory qualifications for jury service.

"(k) 'Qualified juror list' means a list of qualified jurors.

"(l) 'Random' means that which occurs by mere chance indicating an unplanned sequence of selection where each juror's name has substantially equal probability of being selected.

"(m) 'Source list' means a list used as a source of potential jurors.

"(n) 'Summons list' means a list of prospective or qualified jurors who are summoned to appear or to be available for jury service.

"(o) 'Trial jurors' are those jurors sworn to try and determine by verdict a question of fact.

"(p) 'Trial jury' means a body of persons selected from the citizens of the area served by the court and sworn to try and determine by verdict a question of fact.

"(q) 'Trial jury panel' means a group of prospective jurors assigned to a courtroom for the purpose of voir dire."

[14]Rule 33.6 of the California Rules of Court, enacted in 1997, now clarifies that to the extent section 237 provides protection for juror personal identifying information, trial court clerks and reporters must redact such information from transcripts furnished on appeal, and that instead the jurors be referred to using an identifying number. The clerk is to prepare a key

In *Zamudio, supra,* 64 Cal.App.4th 24, defense counsel sought access to the questionnaires of trial jurors with their personal identifying information redacted to assist in determining whether one of the jurors who voted for imposition of the death penalty did so out of a belief that it was required if the jury found the defendant guilty of an intentional killing. The trial court refused the request, finding that the content of the questionnaires constituted confidential juror information, and that the defendant had failed to show good cause for their release pursuant to section 237. In reversing, the court noted that section 237 applied only to protect "personal juror identifying information" as defined in the statute, and that *"absent the request for the personal juror identifying information, section 237 does not apply."* (64 Cal.App.4th at p. 30, original italics.) Of even more cogency to the issue we face, the *Zamudio* court went on to observe: "The jury questionnaires were part of the voir dire of the individual jurors and, absent personal juror identification information, there is no legal reason to preclude petitioner's counsel from having access to them. In fact, *it would be error not to do so."* (*Ibid.,* italics added; see also *People v. Granish* (1996) 41 Cal.App.4th 1117 [49 Cal.Rptr.2d 45].)

We agree with *Zamudio.* The option of extracting involuntarily the Public Defender's copies of juror questionnaires so they may be sealed to protect a content-based privacy interest, or to protect the identity of jurors, was not available to the trial judge here. The First Amendment prohibits the indiscriminant sealing of these questionnaires. As to venire members who were not sworn as trial jurors, the law currently provides privacy protection from public disclosure of their names only upon a showing of a compelling interest. As to the questionnaires of trial jurors, the court was limited to ensuring that the personal juror identifying information (names, addresses, and telephone numbers, only) was redacted from the Public Defender's copies. The Public Defender agreed to do so, a promise the trial court surely respected based on the effusive praise expressed by the judge for the integrity of the Public Defender and her office during the contempt hearing.

## D.

As former trial judges and lawyers, we fully sympathize with the desire of the judge below to protect jurors' privacy interest, whether it be content-based or the desire for anonymity. The burgeoning use of juror questionnaires in some courts has complicated the problem. Their use is seen by some as a less intrusive means than oral voir dire of obtaining deeply personal information needed from prospective jurors in criminal trials involving highly emotional facts or issues. As did the *Copley II* court, we

---

that correlates the number with the individual juror's identity, and to keep the key under seal in the trial court's file. (Rule 33.6.)

recognize the reticence of private citizens to serve on juries is exacerbated by the need to disclose, if not in questionnaires then during the oral questioning phase of jury selection, the most intimate details of their lives. Not infrequently public service compels jurors to recall their darkest moments, which they may have struggled for years to forget, and then be required to recount them in public. It may be cold comfort that at least the law allows these exquisitely personal revelations to be made in a judge's chambers where the audience is smaller, and there is less likelihood the transcript of the disclosures will find an interested public audience.

The otherwise understandable desire to preserve juror privacy conflicts with the constitutional mandate requiring public access to most information about the private lives of potential jurors. This conflict is exacerbated by the apparently common practice of accompanying questionnaires with words of comforture promising, at least ambiguously, some form of confidentiality for the completed questionnaires. This was done in the case before us: "The use of this questionnaire will shorten the process of jury selection and provide greater privacy for your answers. YOUR ANSWERS WILL BE USED ONLY IN THE SELECTION OF THIS JURY AND NOT FOR ANY OTHER PURPOSE. ANY FOLLOW-UP QUESTIONS TO SENSITIVE AREAS COVERED IN THE QUESTION-NAIRE WILL BE CONDUCTED OUTSIDE THE PRESENCE OF THE OTHER JU-RORS, WHEN REQUESTED. . . . [¶] . . . [¶] The questionnaires and copies will be collected by the Court, and those submitted by jurors selected to serve in the trial will be maintained by the Court, under seal and in confidence, unless otherwise ordered." As both *Lesher* and *Copley II* instruct, this is incorrect. No comprehensive offer of protection from public disclosure of information communicated on juror questionnaires is legally effectual where public access is mandated by the First Amendment. (*Press-Enterprise, supra,* 464 U.S. at p. 509, fn. 8 [104 S.Ct. at p. 824].)[15]

For these important reasons, like both appellate panels in *Lesher* and *Copley II,* including the separate concurrence in the latter case, we again entreat trial judges to insist that venire panels be advised in unambiguous language at the time questionnaires are distributed that they will become public records accessible to anyone and, as an alternative to writing in

---

[15]After acknowledging a blanket denial of access to juror questionnaires was unconstitutional under *Press-Enterprise,* the *Copley II* court nevertheless went on to reiterate its earlier finding that an "estoppel" applied barring their release: "[W]e conclude that to not honor the trial court's assurance of confidentiality would be unfair to the venirepersons in this case who presumably relied on that assurance . . . [in not] requesting an in camera hearing so they could protect potentially legitimate privacy concerns." (*Copley II, supra,* 228 Cal.App.4th at pp. 89-90.) Since neither side to this appeal has raised the "estoppel" issue, we need not decide its legal efficacy as a shield either to petitioner's or the public's access to juror questionnaires.

sensitive personal data, jurors can respond to questions asked on the questionnaire on the record in chambers with counsel present. In this way, trial courts can preserve the option of ordering the transcript of that portion of jury selection sealed upon a showing consistent with *Press-Enterprise.*

## IV.

The judgment of contempt is annulled. Let a peremptory writ of prohibition issue forever restraining respondent court from enforcing the contempt order at issue herein.

Kline, P. J., and Haerle, J., concurred.