## Commonwealth *vs.* Manuel Silva.

Bristol. January 2, 2007. - April 5, 2007.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, & Cordy, JJ.

*Constitutional Law,* Impoundment order. *Uniform Rules on Impoundment Procedure. Practice, Criminal,* Impoundment order, Jury and jurors. *Jury and Jurors. Supreme Judicial Court,* Superintendence of inferior courts, Appeal from order of single justice. *Public Records.*

Clarification of the correct procedure for nonparties, including members of the media, to obtain appellate review of an impoundment order in an ongoing criminal case. [703-706]

A Superior Court judge hearing a newspaper's motion requesting postverdict access to the names and addresses of jurors who had served at a murder trial involving alleged gang violence did not abuse his discretion by denying the motion and ordering the impoundment of that information, in light of identified and justifiable concerns regarding the jurors' safety. [706-710]

INDICTMENT found and returned in the Superior Court Department on September 26, 2002.

Following entry of an order impounding the jury list by *Gary A. Nickerson,* J., review of the order was sought by a nonparty from a single justice of the Appeals Court.

The matter was reported to a panel of the Appeals Court by *Elspeth B. Cypher,* J. The Supreme Judicial Court on its own initiative transferred the matter from the Appeals Court.

*Anthony C. Savastano* for Standard-Times Publishing Company.

*Randall E. Ravitz,* Assistant Attorney General, for Superior Court Department of the Trial Court for the county of Bristol.

*Peter J. Caruso & Peter J. Caruso, II,* for Massachusetts Newspaper Publishers Association, amicus curiae, submitted a brief.

Cowin, J. In this appeal, the Standard-Times Publishing Company, publisher of the New Bedford Standard-Times newspaper (the Standard-Times), seeks review of an order of a

judge in the Superior Court impounding the names and addresses of jurors who served at a murder trial involving alleged gang violence. We conclude that in light of identified and justifiable concerns regarding the jurors' safety, the impoundment order was not an abuse of discretion.[1]

*Background.* The relevant background is set forth in the judge's order. The defendant was charged with murder in the first degree and conspiracy in the shooting death of the victim. At trial the Commonwealth introduced evidence that the defendant and another individual were members of a New Bedford street gang, and that they killed the victim, a member of a rival gang, by firing multiple rounds at him in his automobile in what the judge termed "an indiscriminate act of gang vengeance." One of the Commonwealth's principal witnesses at trial was the defendant's girl friend. Prior to her testimony, she was attacked by an unknown individual who fired shots at her in her automobile, lodging four bullets in the car but leaving her unharmed. During the trial, the judge discharged one of the empanelled jurors, a New Bedford resident who worked near where the events took place, because she "had become so fearful of the circumstances surrounding the case that she could not fairly continue." The jury ultimately returned a verdict of not guilty. Two hours later, police were called to the house of the defendant's mother, which had been sprayed with gunfire by an unknown assailant. At least eleven shots were fired at the home, one grazing a bystander.

Prior to the verdict, a reporter for the Standard-Times filed a motion requesting postverdict access to the names and addresses of the trial jurors. The Standard-Times later filed an "Amended Motion for Jury List" seeking the same information. At a hearing on the motion, counsel for the Standard-Times argued that the newspaper had a right to the information under both the First Amendment to the United States Constitution and the common-law right of access to judicial records. Neither the Commonwealth nor the defendant took a position. The Commonwealth did, however, express reservations about releasing the identities of the jurors, due chiefly to juror safety issues,

---

[1] We acknowledge the amicus brief of the Massachusetts Newspaper Publishers Association.

and brought to the judge's attention the shooting that had taken place shortly after the verdict. The judge asked the Commonwealth to provide police reports from that incident and from the shooting involving the defendant's girl friend, of which the judge was already aware.

In a thoughtful memorandum of decision, the judge denied the motion for access to the jury list and ordered the jurors' names and addresses impounded, stating that "[a] genuine concern for the safety of [these] jurors bars any release of identifying data." The judge particularly emphasized the shooting incident immediately after the trial, which, based on its timing and location, he interpreted as retaliation for the jury's verdict of not guilty. The Standard-Times sought review of the order from a single justice of the Appeals Court, arguing that the impoundment of the jury list was both legally erroneous and not supported by sufficient findings.[2] The single justice reported the case to a panel of the Appeals Court. The Attorney General entered an appearance on behalf of the Superior Court Department of the Trial Court (Superior Court).[3] We transferred the matter here on our own motion.

*Procedure.* As an initial matter, the Superior Court argues that the instant appeal was not properly before the single justice of the Appeals Court. This argument requires us to revisit the question of the proper procedure for nonparties, including members of the media, to obtain access to impounded court documents. See *Republican Co.* v. *Appeals Court,* 442 Mass. 218, 227 n.14 (2004); *Boston Herald, Inc.* v. *Sharpe,* 432 Mass. 593, 600-602 (2000); *Newspapers of New England, Inc.* v. *Clerk-Magistrate of the Ware Div. of the Dist. Court Dep't,* 403

---

[2]The Standard-Times contends that the trial judge was required to hold an evidentiary hearing in order to make the requisite findings. However, it does not appear that the Standard-Times ever specifically requested an evidentiary hearing.

[3]In so doing, the Attorney General was presumably guided by the practice of our prior cases in which the court that issued a challenged impoundment order is a named defendant. See generally *Newspapers of New England, Inc.* v. *Clerk-Magistrate of the Ware Div. of the Dist. Court Dep't,* 403 Mass. 628 (1988), cert. denied, 490 U.S. 1066 (1989); *Ottaway Newspapers, Inc.* v. *Appeals Court,* 372 Mass. 539 (1977).

Mass. 628, 629 nn.2 & 3 (1988), cert. denied, 490 U.S. 1066 (1989); *Ottaway Newspapers, Inc.* v. *Appeals Court*, 372 Mass. 539, 551 (1977).

Recently, in the *Republican Co.* case, we provided guidance on this recurring issue with particular regard to criminal cases:

> "Where possible, a nonparty seeking access to material that has been impounded in the course of a criminal proceeding should file a motion to be heard in the proceeding and in the court that issued the order of impoundment. In those circumstances where there is no ongoing proceeding that would allow for the filing of such a motion, a nonparty seeking relief from an order of impoundment may proceed by 'bring[ing] a civil action in the court which issued it, joining the clerk of that court in his official capacity and the parties to the action or at least any who obtained or may defend that order.' "

*Republican Co.* v. *Appeals Court*, *supra* at 227 n.14, quoting *Ottaway Newspapers, Inc.* v. *Appeals Court*, *supra* at 551. The *Republican Co.* decision did not, however, explain the proper avenue of appellate review in such cases. A separate civil action brought against the court issuing the impoundment order will "end in a judgment capable of appeal under ordinary rules." *Ottaway Newspapers, Inc.* v. *Appeals Court*, *supra* at 551. Here, however, where there was an "ongoing proceeding," the Standard-Times properly "file[d] a motion to be heard in the proceeding," *Republican Co.* v. *Appeals Court*, *supra*, but it was not clear how to obtain review of the disposition of its motion. The Standard-Times petitioned a single justice of the Appeals Court for review pursuant to G. L. c. 231, § 118, first par. However, this provision applies only to interlocutory orders in *civil* cases. See *Stewart* v. *Commonwealth*, 413 Mass. 664, 666 n.5 (1992), *S.C.*, 414 Mass. 1006 (1993). We therefore take the opportunity to clarify the correct procedure for nonparties, including the media, to obtain appellate review of an impoundment order in an ongoing criminal case.

In the past, when describing procedures to be followed regarding impoundment in criminal cases, we have looked to the Uniform Rules on Impoundment Procedure, which, although

technically applicable only to civil proceedings, have been considered instructive in criminal cases as well. See *Republican Co.* v. *Appeals Court, supra* at 223 n.8, 225 n.11. Indeed, we have stressed that the "[p]ractice regarding orders of impoundment entered in criminal proceedings should hew as closely as possible to the protocol described by the uniform rules." *Id.* at 227 n.14. Thus, in the absence of any statute or rule expressly providing a route for appellate review of impoundment orders in criminal cases, we look to the analogous provision of the uniform rules, which provides that "[a]n order impounding or refusing to impound material shall be subject to review by a single justice of an appellate court in accordance with provisions of law and consistent with the procedures established in Rule 1:15 of the Rules of the Supreme Judicial Court."[4] Rule 12 of the Uniform Rules on Impoundment Procedure (2007). In future cases, appellate review of an impoundment order in an ongoing criminal proceeding should conform to the Uniform Rules on Impoundment Procedure, and should be sought in the first instance before a single justice of the Appeals Court, as was done in the present case.[5]

We impose an additional requirement relevant to motions filed in ongoing criminal cases by nonparties seeking access to impounded documents such as jury lists. While the parties to the underlying action will often have a sufficient interest to litigate such a motion adequately, sometimes, as in the present case, they may take no position. See *In re Globe Newspaper Co.*, 920 F.2d 88, 91 (1st Cir. 1990) (where parties to action did not oppose release of jury list, it was helpful to have counsel for trial court to articulate position favoring jury privacy). In a case of this nature, the Attorney General is best suited to

---

[4]S.J.C. Rule 1:15, as appearing in 401 Mass. 1301 (1998), governs impoundment procedure in the appellate courts. Rule 1:15 draws no distinction between criminal and civil appeals, providing that the Uniform Rules on Impoundment Procedure, "when used in conjunction with this rule, shall govern impoundment in both civil and criminal proceedings."

[5]Because there was considerable doubt as to the proper appellate procedure in these circumstances, we may entertain this appeal under our superintendence powers pursuant to G. L. c. 211, § 3, "to resolve the doubt and settle a general rule." *Ottaway Newspapers, Inc.* v. *Appeals Court, supra* at 551.

represent the interests of the public, including jurors, where the impounded materials may concern jurors.[6] Accordingly, the Attorney General must receive notice of, and an opportunity to be heard on, any motion filed in any court by a nonparty to obtain access to impounded documents in a criminal case.[7]

*Relevant law.* We turn to the substance of the Standard-Times's appeal. In Massachusetts, the right of public access[8] to judicial records is governed by overlapping constitutional, statutory, and common-law rules. There is no statutory right to the names and addresses of members of a jury panel.[9] Only the list of the entire jury venire, which is not at issue here, is a public record pursuant to G. L. c. 234A, § 67.[10] Furthermore, while the questionnaires completed by jurors prior to their service are made confidential by statute, see G. L. c. 234A, §§ 22, 23, those documents are likewise not at issue here.

Massachusetts has long recognized a common-law right of

---

[6]As in the present case, the Attorney General has often appeared in litigation to represent the court issuing an impoundment order. See note 3, *supra.* This is merely an extension of the Attorney General's authority to represent judges and courts in litigation, see *Casey* v. *Justice of the Superior Court,* 229 Mass. 200, 202 (1918), and duty to represent the public interest. See *Secretary of Admin. & Fin.* v. *Attorney Gen.,* 367 Mass. 154, 163 (1975).

[7]Such notice should clearly specify that notice is being given as required by law and that the Attorney General has the right to be heard.

[8]Like the right to attend court proceedings, the right of the media to gain access to judicial records "derives entirely from the public's right of access," and the media "have neither a greater nor a lesser right . . . than any other member of the public." *Boston Herald, Inc.* v. *Superior Court Dep't of the Trial Court,* 421 Mass. 502, 505 (1995).

[9]There was a document containing the names of the empanelled jurors, as indicated by numerous references to "the jury list." Regardless whether this document contained the addresses of the jury members, they could easily be obtained from the list of the entire jury venire, which is a public record. See G. L. c. 234A, § 67, set forth at note 10, *infra.*

[10]General Laws c. 234A, § 67, provides:

> "Not later than ten days in advance of scheduled appearances by jurors, the office of jury commissioner shall send or deliver to the appropriate clerks of court a list of the grand and trial jurors expected to appear for service in the respective courts. The list shall contain the name, address, and date of birth of each juror and such other information as the jury commissioner, with the approval of the committee, deems appropriate. Unless the court orders otherwise, the list shall be available upon request for inspection by parties, counsel, their agents, and members of the public."

public access to judicial records.[11] *Republican Co.* v. *Appeals Court, supra* at 222. *Boston Herald, Inc.* v. *Sharpe, supra* at 604. This right of access is not absolute, however, and must yield to a trial judge's decision to impound records for "good cause." *Republican Co.* v. *Appeals Court, supra* at 223. *Boston Herald, Inc.* v. *Sharpe, supra.* This balance of competing rights is reflected in the Uniform Rules on Impoundment Procedure, which "incorporate many of the principles of our prior cases, including the requirement that an order of impoundment be entered only on a showing of 'good cause.' "[12] *H.S. Gere & Sons, Inc.* v. *Frey,* 400 Mass. 326, 332 (1987).

There is also a constitutional right of public access to court proceedings grounded in First Amendment principles. See *Press-Enter. Co.* v. *Superior Court of Cal.,* 478 U.S. 1, 9-10 (1986), citing *Press-Enter. Co.* v. *Superior Court of Cal.,* 464 U.S. 501, 510 (1984); *Newspapers of New England, Inc.* v. *Clerk-Magistrate of the Ware Div. of the Dist. Court Dep't,* 403 Mass. 628, 634 (1988), cert. denied, 490 U.S. 1066 (1989). In this case, however, the judge did not attempt to apply a separate constitutional analysis, because none was necessary. The "good cause" analysis of rule 7 of the Uniform Rules on Impoundment Procedure "require[s] a judge to take into account essentially the same factors as required by the First Amendment: 'the competing rights of the parties and alternatives to impoundment.' " *Republican Co.* v. *Appeals Court, supra* at 223 n.8, quoting *Boston Herald, Inc.* v. *Sharpe, supra* at 605 n.24. Thus, in applying the "good cause" standard of the uniform rules, the judge of necessity treated the relevant constitutional considerations, and we do likewise.

*Discussion.* We review a trial judge's decision to impound judicial records for abuse of discretion or other legal error.

---

[11]We assume, without deciding, that in this case the information sought by the Standard-Times constitutes a "judicial record."

[12]Rule 7 of the Uniform Rules on Impoundment Procedure (2007) provides, in part: "An order of impoundment may be entered by the court, after hearing, for good cause shown and in accordance with applicable law. In determining good cause, the court shall consider all relevant factors, including, but not limited to, the nature of the parties and the controversy, the type of information and the privacy interests involved, the extent of the community interest, and the reason(s) for the request."

*Boston Herald, Inc.* v. *Sharpe, supra* at 601. Here, the judge impounded the jurors' names and addresses based on a concern for juror safety that was amply justified by the circumstances surrounding the trial.

The safety of jurors is crucial to the functioning of the judicial system. See *Commonwealth* v. *Acen*, 396 Mass. 472, 482 (1986) (recognizing that jury service is "critical to the just operation of the court system"). If jurors doubt the system's ability to protect them from violence, cooperative service is discouraged and public confidence in the rule of law is diminished. Furthermore, as one court has astutely observed, "[u]ninhibited and frank jury deliberations are essential to our system of justice. That frankness would be jeopardized if jurors refrained from speaking freely because they fear for their safety should their names and comments become public knowledge." *In re Disclosure of Juror Names and Addresses*, 233 Mich. App. 604, 628 (1999). See *United States* v. *Giraldi*, 858 F. Supp. 85, 86 (1994) (recognizing court's duty to impound juror information where necessary to protect jurors from reprisal and intimidation). While other key participants in a high-profile criminal trial involving dangerous offenders — the prosecutor, the defense attorney, and the judge — have all willingly accepted any attendant publicity and risks, the jurors have not. Having conscripted jurors into what has been aptly termed, "next to bearing arms in defense of the nation, . . . the highest calling of American citizenship," *United States* v. *Doherty*, 675 F. Supp. 719, 722 n.4 (D. Mass. 1987), the justice system owes them the highest degree of vigilance for their personal safety.

We have no difficulty concluding that, in this particular murder trial, considerations of juror safety warranted impoundment of the jury list. The killing itself was an appalling act of violence. One of the Commonwealth's key witnesses was the victim of an armed assault prior to trial. A mere two hours after the jury's verdict acquitting the defendant, and ostensibly in response to it, an unknown assailant shot at the house of the defendant's mother. Indeed, one of the jurors feared so greatly for her safety that she had to be released from service.

With the exception of the postverdict shooting, which was made known to the judge at the motion hearing and through a

police report, all of these facts were known to the trial judge as a result of presiding at the trial. In fact, although purporting to contest the legitimacy of the jurors' safety concerns, the Standard-Times states that its very purpose in seeking access to the jurors was to investigate the role that fear of retaliation may have played in their verdict.[13] Thus, in the circumstances of this case, there is no merit to the Standard-Times's argument that the judge was required to conduct an evidentiary hearing regarding the juror safety issues. The Uniform Rules on Impoundment Procedure require only written findings of good cause made after a "hearing" and do not expressly mandate an evidentiary hearing. See note 12, *supra.* There may be special cases where it is necessary to have an evidentiary hearing on whether to impound a jury list, but here, where facts known to the judge by virtue of presiding over the trial raised serious questions of juror safety, it was unnecessary.

We recognize the cases cited by the Standard-Times and the amicus in which other jurisdictions, notably the United States Court of Appeals for the First Circuit, have been protective of the public's right to access juror information.[14] See, e.g., *In re Globe Newspaper Co.,* 920 F.2d 88 (1st Cir. 1990). See also *In re Baltimore Sun Co.,* 841 F.2d 74 (4th Cir. 1998); *State ex rel. Beacon Journal Publ. Co.* v. *Bond,* 98 Ohio St. 3d 146 (2002). We find significant, however, the acknowledgment in several of these cases that "First Amendment rights may have to bow to a court's needs to protect its essential processes, including the jury system, from violence, fraud and other influences that threaten the objectivity and independence of jurors." *In re Globe Newspaper Co., supra* at 97 n.10. See *In re Disclosure of Juror Names and Addresses, supra* at 628-631 (remanding for consideration of risks to juror safety from disclosure). It goes

---

[13]While we of course share the Standard-Times's concern that jury verdicts not be influenced by fear of reprisal, we do not believe that the solution is to subject jurors to publicity that can only enhance these fears.

[14]To be sure, there are as well cases that recognize no right to jurors' information, or give trial judges unfettered discretion to impound it. See generally *Gannett Co.* v. *State,* 571 A.2d 735 (Del.), cert. denied, 495 U.S. 918 (1990); *Newsday, Inc.* v. *Sise,* 71 N.Y.2d 146 (1987), cert. denied, 486 U.S. 1056 (1988); *Commonwealth* v. *Long,* 871 A.2d 1262 (Pa. Super. 2005), appeal granted in part, 584 Pa. 437, 437-438 (2005).

without saying that no case has been called to our attention in which a public right to juror information was held to override a legitimate concern for juror safety.

*Conclusion.* Because the judge had good cause to impound the jury list, there was no abuse of discretion or other error. The order of the Superior Court denying the amended motion for the jury list and impounding the names and addresses of the trial jurors is affirmed.

*So ordered.*