Connors, Thomas A., J.
The defendant Lakeisha Gadson was charged in the above indictment with involuntary manslaughter, child endangerment, unlawful possession of a firearm, improper storage of a firearm, and misleading a police officer with intent to impede an investigation. The case centers upon the tragic death of a young child, Liquarry Jefferson, the defendant’s son. Trial of the case commenced on August 2 and was submitted to the jury on August 6. The jury deliberated over the course of three days, and on August 10 returned a verdict of guilty on the count charging misleading a police officer and not guiliy on the other charges. Sentencing has been scheduled for September 2, 2010. The day following reception of the verdict, the Globe Newspaper Company (Globe), the publisher of the Boston Globe, sought access to the list of names of the jurors who had been empaneled for trial of the case.[1] The Court directed it file a motion with notice to the parties to the criminal action and with notice to the Office of the Attorney General, pursuant to Commonwealth v. Silva, 448 Mass. at 705. The motion was scheduled for hearing on August 13, 2010, at which time counsel for the Globe and the Attorney General, as well as for the parties to the criminal case were heard in argument. The Globe’s motion was opposed by the defendant, who argued that its request not be granted. The Attorney General took the position that on the facts of which her office was aware, the Globe was entitled to the allowance of its motion. The Commonwealth took no position on the Globe’s motion.[2]
Ruling
The starting point for analysis of the law which relates to the Globe’s request in this case begins with the public character of court proceedings in our system of justice and the constitutionally protected right of the public and the press to attendance at criminal trials. Richmond Newspapers v. Virginia, 448 U.S. 555, 576 (1980); Newspapers of New England, Inc. v. Clerk-Magistrate of the Ware District Court, 403 Mass. 628, 634 (1988), cert. denied, 490 U.S. 1066 (1989). The *423 underpinning of this policy has been expressed by the United States Supreme Court as follows:
“The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that anyone is free to attend gives assurance that established procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.” Press-Enterprise v. Superior Court, 464 U.S. 501, 508 (1984) (Press-Enterprise I).
Ancillary to that right enjoyed by the public and the press is the abiliiy to gather information which is connected to such a proceeding. Richmond Newspapers, supra. Branzburg v. Hayes, 408 U.S. 665, 681 (1972). That right has been extended to access to the lists of jurors at a trial, even though these have been categorized as “collateral information” retained by courts for administrative purposes rather than being themselves necessarily a part of the court proceedings. In re Globe Newspaper Company v. Hurley, 920 F.2d 88, 94 (1st Cir. 1991).
Notwithstanding the strong policy which favors access to matters relating to criminal trials, countervailing interests which relate particularly to disclosure of information concerning trial jurors has been recognized. The primary interest at issue for purposes of the Globe’s post-trial application involves the question of juror safety, a consideration which goes to the heart of the functioning of the judicial system. See Commonwealth v. Silva, 448 Mass. 701, 706 (2007), citing Commonwealth v. Acen, 396 Mass. 472, 482 (1986).[3] The significance of this consideration may be so great in a particular case that it may serve to override the presumptive right of the press and the public to information concerning the jurors who had participated in that proceeding. Commonwealth v. Silva, 448 Mass. at 7-8.
The plain teaching of the cases which have dealt with requests such as that made by the Globe in this case is that in the absence of particular compelling circumstances which implicate considerations such as juror safety, denial of such a request through impoundment is not appropriate. Further, an order that juror names not be disclosed cannot be predicated upon the personal preference of the trial judge or of the jurors themselves on the issue of disclosure. Globe v. Hurley, 920 F.2d at 97. Where a showing can be made of such particularized danger, however, as in Commonwealth v. Silva, the constitutional and common-law principles which favor access to such materials must yield.
The legal proceeding at issue in Silva was a murder trial alleged to have involved a violent dispute between rival urban gangs. A key witness was shot at prior to giving her testimony, and one empaneled juror who lived and worked in the city where the homicide had occurred was discharged during trial due to her expression of safety concerns. Within hours of the jury’s rendering of a verdict of acquittal, the residence of the defendant’s mother was subject to a barrage of gunshots, wounding a bystander. Id. at 3-4. The Supreme Judicial Court upheld the trial judge’s order of im-poundment finding that the requisite standard of good cause for that order existed on grounds of legitimate concern for juror safety on those facts.
Determining where any case may be placed on the continuum between Silva and the “typical” criminal case in which impoundment would be unwarranted is not a task given to precision. This is so in light of the inherent difficulty in quantification of any potential threat which might be posed. See People v. Mitchell 232 Mich.App. 604, 592 N.W.2d 798, 809 (1999) (“Only rarely will a trial court have concrete evidence of a potential risk of harm to a juror”). Indeed, even decisions which have ruled order of disclosure necessary have reflected a tone of unease with the implications of that act by a court with its sense of responsibility for those citizens who have taken up the burden and accepted the responsibility of serving as jurors. See Globe v. Hurley, 920 F.2d at 97 (“[in permitting access to juror identifying data] we realize that many present and past jurors could be troubled by our seeming indifference to their desire for personal privacy”). This consideration is especially strong in circumstances like the present, where thejuiy was put to service in an especially emotional and difficult case.
The basis which the defendant has raised in opposing the Globe’s motion for disclosure of the juror information rests upon the significant media attention the case has received, both before and during the trial as well as after the rendering of the jury’s verdict. The defendant has submitted a number of newspaper articles concerning the case published over the course of time prior to, during, and after the trial. These included a newspaper column which ran two days after the verdict in which an individual was quoted who specifically was critical of the juiy’s decision.
Unquestionably the media coverage of this case was very extensive. Further, it may be as the defendant argues, that the post-verdict article cited and comments made by non-observers of the actual trial may well be wanting in factual grounding as to what the jury was asked to do — to apply the trial evidence to the five specific crimes charged in the indictment and the particular elements which they encompass. However, measured against the standard set forth in Silva, the court is constrained to find that the standard of good cause for impoundment has not been met.
Order
The motion of the non-party Boston Globe Newspaper for access to the jury list is Allowed.

 The Globe is not seeking access to the juror questionnaires, which are made confidential by statute. G.L.c. 234A, *424 §§22 and 23. The information at issue in the decision of this motion is the names of the jurors empaneled on this case. The jury venire list for all persons summoned as jurors for the date of the case’s empanelment, which contains names and addresses, is already a public document by virtue of G.L.c. 234A, §67. See Commonwealth v. Silva, 448 Mass. 701, 706 and n. 9 (2007).

 The Assistant District Attorney who had prosecuted the case at trial noted that since the interests of the fourteen empaneled jurors themselves were at issue, that perhaps notice might be sent to them so that they might be heard on the Globe’s motion. The Court determined not to require that notice in this case, noting the logistical difficulties presented, the implicit disclosure of names of those who might appear, and the intrusiveness and possible expense to jurors so notified who might feel obligated to respond through counsel. Further, the Court takes the ruling in Silva with its outlining of procedure for notice to the Attorney General in such cases as providing for a recognition of the public interest beyond that presented by the parties to the criminal case and the non-party media concern. See Commonwealth v. Silva, 448 Mass. at 705-06 (“In a case of this nature, the Attorney General is best suited to represent the interests of the public, including jurors, where the impounded materials may concern jurors”). While the position of the Attorney General in this case turns out to be congruent to that of the Globe, the issue, nonetheless, has been litigated adequately, given the defendant’s articulated opposition to the Globe’s motion.

 A second consideration cited as a basis for impoundment of juror identification materials, the right of the accused to a fair trial, is more directly implicated in the context of pre-ver-dict disclosure. Globe v. Hurley, 920 F.2d at 93, citing Shepperd v. Maxwell 384 U.S. 333, 362-63 (1966). That interest, post-verdict, would relate only to the more attenuated consideration of the possible effect of disclosure upon members of future venires whose willingness to serve may be affected negatively by awareness of the potential for publicity surrounding their identities following their participation in a trial and rendering of a verdict.