Cordy, J.
This appeal arises out of a Superior Court judge’s ruling on a motion by the Globe Newspaper Company, Inc. (Globe), seeking postverdict access to the “jury list” containing the names and addresses of the jurors who served at the trial of Nathaniel Fujita on charges of murder in the first degree and *485 assault and battery by means of a dangerous weapon. The trial began on February 11, 2013. On March 1, while the trial was ongoing, the Globe filed its motion to obtain the names and addresses of the jurors immediately following entry of the verdict, for the purpose of ascertaining their willingness to discuss the trial.[2] On March 7, 2013, the jury returned verdicts of guilty. Seven days later, the trial judge held a hearing on the Globe’s motion. On March 26, he ruled that he would send letters to the jury asking if they were “amenable” to speaking to the press, and would permit disclosure only of the names and addresses of those jurors who responded affirmatively to his letter. On April 16, 2013, presumably at the judge’s direction, the Superior Court clerk’s office provided the Globe with the names and addresses of two jurors willing to speak to the press, along with instmctions that the Globe was to “use this information only for the purpose stated in [its] motion” and “not to disseminate this juror information to other news agencies or third persons.”
The Globe filed a petition for relief from the judge’s ruling with a single justice of the Appeals Court pursuant to G. L. c. 231, § 118. The single justice initially denied the petition, but on reconsideration reported it to a panel of the Appeals Court.[3] We transferred the petitioner’s appeal to this court on our own motion.
After oral argument, we remanded the case to the Superior Court judge for findings regarding questions about the creation and retention of any list of jurors empanelled to render a verdict in the case.[4]
*486 For the reasons more fully set forth herein, we conclude that the public’s long-term interest in maintaining an open judicial process, as embodied in the United States Constitution and Massachusetts common law, requires that a list identifying the names of jurors who have been empanelled and rendered a verdict in a criminal case be retained in the court file of the case and be made available to the public in the same manner as other court records. Only on a judicial finding of good cause, which may include a risk of harm to the jurors or to the integrity of their service, may such a list be withheld.[5] Insofar as the only basis for the order in this case was the judge’s aversion to exposing jurors to press interviews and the personal preferences of the jurors, his order must be set aside in part, and a list identifying the names of jurors (without addresses) be disclosed.[6]
Discussion. It is beyond debate that, absent extraordinary circumstances,[7] the identities of jurors empanelled to serve at criminal trials are presumptively public under long-standing Massachusetts law, practice, and tradition, even in high-profile and contentious cases.[8]
By statute, the lists of all jurors summoned to jury service each *487 month in every court, containing the “name, address and date of birth of each juror,” are public records “available upon request for inspection by parties, counsel, their agents, and members of the public.” G. L. c. 234A, § 67. Under Federal jurisprudence, there is also a constitutional right of public access to court proceedings, including juror empanelment proceedings. See Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 507-510 (1984); Commonwealth v. Cohen (No. 1), 456 Mass. 94, 106-107 (2010). This right is grounded in both fair trial and First Amendment principles. Cohen (No. 1), supra at 106. In addition, in Massachusetts, we have “long recognized a common-law right of public access to judicial records.” Republican Co. v. Appeals Court, 442 Mass. 218, 222 (2004). Together, these rights are intended to ensure and instill public confidence and trust in our system of justice, and in the integrity and fairness of its proceedings.
It is also beyond debate that the identities of the jurors empanelled to decide a case at some point become known to the court and become part of the court record in the case. This often happens as it did here, during the individual voir dire of the potential jurors, when jurors are identified not just by their assigned juror numbers, but also by their names. If disclosed during the empanelment process, the information is duly recorded by the court reporter or recording system, and is later available for transcription.[9]’[10]
*488 Whether or not the names of the sitting jurors publicly emerge during the empanelment process, there is little doubt that court officials assemble a tangible list of their identities for use during the trial. Historically, these “juror lists” have been included and can be found in the court files of closed cases that proceeded to trial. See Hindus, Hammett, & Hobson, Massachusetts Superior Court Files, 1859-1959 (1980) (finding that such files “usually include a list of jurors”). See also C. Menand, A Guide to the Suffolk County Inferior Court of Common Pleas 13 (1981) (“Juror lists appear regularly among the papers after 1797 and are filed ... at the beginning of the case file papers for each term”).
On remand, the judge found that several such lists had, in fact, been created, but were neither preserved nor included in the case file. First, there was a “jury [ejmpanelment sheet” containing the names and badge numbers of all prospective jurors sent to the session for empanelment. This list did not include addresses. It was used by the session clerk to mark the jurors who were sworn, excused, or not reached. This list was returned to the jury pool office after the jury had been selected, and not retained for inclusion in the court file of the case. Second, the session clerk created a separate “Daily Report of Juror Attendance,” listing the empanelled jurors’ names and badge numbers but not their addresses. This list was used to record daily juror attendance.[11] It also was returned to the jury pool office each day and not retained for the court file of the case. Finally, the session court officers prepared a list of empanelled jurors and their telephone numbers, which was provided to the session clerk, and was to be used in the event there was a need to contact jurors during the trial, for example, if a juror failed to appear or if the court session needed to be cancelled. This list was destroyed at the end of the trial.[12]
In deciding this case, we are compelled to decide not only whether a list of jurors was maintained in the court file of the case, thus becoming a judicial document accessible to the public unless impounded, Commonwealth v. Winfield, 464 Mass. 672, 679 (2013), but also whether, if not, some form of a jury list should have been included and maintained in the court file. The Globe has directed us to historical cases supporting the tradition *489 of including such a list in the court files of criminal cases,[13] and has identified examples of juror lists readily available in Superior Court files of recent high-profile criminal trials, usually in the form of “Daily Reports of Juror Attendance.”[14] Based on the findings of the judge in this case, it is apparent that there is inconsistency in the current practice of retaining juror lists, a matter of significant public and systemic importance.
Consequently, we take this opportunity to direct that a list of the names of jurors empanelled in any criminal case be included in the court file of the case, no later than at the completion of the trial.[15] This directive is consistent with the prior practice of the Superior Court, both historically and in more recent times.[16]
Having determined that a juror list is a court record, we turn to the subject of its impoundment. In order to overcome the public right of access to judicial records, we have repeatedly stated that there must be a showing of “good cause,” Republican Co., 442 Mass. at 222-223, and cases cited, and that in determining whether good cause has been shown, “a judge must balance the rights of the parties based on the facts of each case.” Id., quoting Boston Herald, Inc. v. Sharpe, 432 Mass. 593, 604 (2000). “In doing so, the judge must take into account all relevant factors, including, but not limited to, the nature of the parties and the controversy, the type of information and the privacy interests involved, the extent of the community interest, and the reason for the request” (quotation and citations omitted). Republican Co., supra. Importantly, we have emphasized that in balancing these interests, “impoundment is always the exception to the rule, and the power to deny public access to judicial records is to be strictly *490 construed in favor of the general principle of publicity” (quotation and citation omitted). Id. Access to information about the operation of the administration of justice, including information about jurors who render justice, promotes confidence in the judicial system by, among other things, providing an independent nongovernmental verification of the impartiality of the jury process, and educating the public as to their duties and obligations should they be called for jury service. The burden falls on the party seeking to limit or bar access to judicial records to overcome the presumption that the records ought to be accessible to the public. Id. at 225.
We review decisions to restrict access to or impound judicial records for abuse of discretion or other legal error. Boston Herald, Inc., 432 Mass, at 601. In the present case, the only reason proffered to support good cause was the apparent personal preferences of the jurors who responded to the judge’s letter sent approximately one month after the trial had concluded.[17] We are not indifferent to the desire of many jurors to return to their private lives uninterrupted by media or other inquiries about their service; however, standing alone, such interests ordinarily will be inadequate as a matter of law to support an impoundment order in the face of the great weight we afford to the principle of public availability. In this respect, we agree with the United States Court of Appeals for the First Circuit that “where — as here — the trial judge points to no special reason for confidentiality other than the personal preferences of the jurors ... the public’s long-term interest in maintaining an open judicial process must prevail in the balance.” In re Globe Newspaper Co., 920 F.2d 88, 91 (1st Cir. 1990). A judge’s personal distaste for press interviews of jurors is accorded no weight in this balancing.[18] Although we recognize that there are courts in other jurisdictions that have concluded that *491 there is no public right to know the identities of jurors or that the privacy interests of jurors alone tramp the public right of access to judicial records that disclose their identities, see Commonwealth v. Silva, 448 Mass. 701, 709 n.14 (2007), we have historically concluded otherwise. “[T]he prospect of criminal justice being routinely meted out by unknown persons does not comport with democratic values of accountability and openness.” In re Globe Newspaper Co., supra at 98.
Accordingly, the ruling of the judge is reversed in part, and the names of the jurors shall be made available, without restriction, to the Globe.[19]

So ordered.

The Commonwealth apparently filed an opposition to the motion filed by the Globe Newspaper Company, Inc. (Globe), citing the “privacy interests of the jurors.” The Commonwealth has not filed a brief in this appeal, but the Attorney General has appropriately filed a brief and supplemental record appendix as intervener. See note 3, infra.

The single justice of the Appeals Court also ordered that the Attorney General be notified of the Globe’s petition and be given an opportunity to be heard. See Commonwealth v. Silva, 448 Mass. 701, 706 (2007). The Attorney General then proceeded as an intervener.

More specifically, the case was remanded to the Superior Court for findings regarding the following questions:
“1. In what form, if any, were the names and addresses of the jurors kept for use during the trial? If the names and addresses were kept, by whom were they kept?
“2. From what sources and by whom was information about juror names and addresses assembled?
“3. Was there a ‘jury list’ created? If so, by whom?
*486 “4. Was this information made part of the court file in this case? If so, when?
“5. What is the custom and practice of retaining such information, whether in the court file or some other file?”

Before making such a list available, the trial judge may conduct a hearing with respect to whether good reason exists to impound the list.

We also conclude that the limitation on the further dissemination of the juror names constituted a prior restraint on the press forbidden by the First Amendment to the United States Constitution and art. 16 of the Massachusetts Declaration of Rights, and it also must be set aside.

See Commonwealth v. Angiulo, 415 Mass. 502, 527 (1993) (“The due process clause precludes the empanelment of an anonymous jury at a criminal trial unless anonymity is necessary to protect the jurors from harm or improper influence”).

For example, jury selection in the 1770 prosecutions of the British soldiers charged with the Boston Massacre was open to the public, and the identities of the jurors who acquitted the soldiers were known to the community. See 3 Legal Papers of John Adams 17-19, 49 n.l, 99-100 (L. Wroth & H. Zobel eds. 1965). Similarly, in the 1806 trial of Thomas Selfridge, a prominent Boston attorney accused of shooting and killing the son of a political rival in the middle of the day on State Street, the jurors were drawn and publicly announced at the trial — the first being Paul Revere (who went unchallenged) — and were listed in the publicly available reports of the proceeding. See, e.g., Trial of Thomas O. Selfridge, Att’y at Law, Before the Hon. Isaac Parker, Esquire, For Killing *487 Charles Austin on the Public Exchange, in Boston, August 4th, 1806, at 9 (Russell & Cutter, Belcher & Armstrong, Oliver & Munroe, and William Blagrow, 1807) (juror empanelment on Dec. 23, 1806). Similarly, in the 1849 trial of Professor John W. Webster for the murder of Dr. George Parkman (one of the most intensely followed and reported murder trials in the United States at the time), the jurors’ names were publicly drawn at the beginning of the trial and published in special editions of the newspapers of the time. See, e.g., Trial of Professor John W. Webster for the Murder of Dr. George Parkman in the Medical College, at 6 (Boston Herald Steam Press, 1850) (listing names of jurors selected for trial).

In his decision on the Globe’s motion, the judge observed that “[tjhroughout the trial of this matter, justice required that the names of the jurors be kept from public access to protect them from outside influences that could jeopardize the parties’ rights to a fair trial,” citing In re Globe Newspaper Co., 920 F.2d 88, 90 (1st Cir. 1990), and it appears that during their empanelment process the names of the jurors were only mentioned at their individual voir dire examination done at sidebar and out of the hearing of the public in attendance.

It is not always the case that the names rather than the numbers assigned to jurors are disclosed, and therefore transcribed by the court reporter during the empanelment process.

This list was created by the session cleric both in electronic and paper forms.

The judge also maintained copies of the confidential juror questionnaires previously completed by the jurors who were empanelled on the jury. The questionnaires are not public records, G. L. c. 234A, § 23.

The history of this tradition has been confirmed by our own random review of records of cases (mostly murder trials) tried by juries before the Supreme Judicial Court in the Nineteenth Century.

Also labelled as “Daily Trial Attendance Records” in some court files.

This list is not to include information obtained from the confidential juror questionnaires and is appropriately limited to the names of the jurors on the daily attendance records.

In a letter dated May 18,1983, James R Lynch, Jr., then Chief Justice of the Superior Court, addressed the practice in a letter to the Massachusetts Newspaper Publishers Association. In that letter, Chief Justice Lynch explained that, “[a]s a practical matter,” a person could properly obtain juror names from the session clerk’s “daily attendance record[sj,” and could then obtain juror addresses from the jury commissioner’s list (of all jurors summoned to the court session) on file and publicly available in the clerk-magistrate’s office. See G. L. c. 234A, § 67.

It is important to note what this case is not about. It is not about impounding the names and addresses of seated jurors during the course of a highly visible trial where the risks of inappropriate juror contact would jeopardize a party’s right to a fair trial. It is also not about withholding juror identities after trial where there is a risk of personal harm to the jurors. See Silva, 448 Mass. at 708. Nor is it about a judge’s authority to impound the responses of jurors to highly invasive or personal questions (necessitated by the nature of the case to be tried) posed during the individual voir dire process. In each of these circumstances, good cause would be readily apparent.

It is, however, not inappropriate for a trial judge to meet with the jurors postverdict to discuss the importance of and value in not disclosing what was said by other jurors in the deliberative process, and to advise jurors of their right not to respond to media requests, and to bring acts of harassment to the court’s *491 attention promptly. See, e.g., In re Globe Newspaper Co., 920 F.2d at 91 (judge “properly urged the jurors to keep their deliberations confidential”).

The restriction on dissemination placed on the Globe’s use of the names and addresses lawfully obtained from the court’s records is plainly a prior restraint forbidden by the First Amendment and art. 16. See George W. Prescott Publ. Co. v. Stoughton Div. of the Dist. Court Dep’t of the Trial Court, 428 Mass. 309, 310-312 (1998); United States v. Quattrone, 402 F.3d 304, 311-313 (2d Cir. 2005). The Attorney General recognizes the problem, but suggests that the matter should be remanded for clarification, where it is not clear whether this restriction was part of the judge’s original order. The restriction fails in any case.